## ALFRED H. GEORGE *v.* WILLIAM M. PIGFORD ET AL., RECEIVERS.

### [52 South. 796.]

RECEIVERS. *Insolvent corporation. Priority of claims. Debt for feed-stuff.*

A debt due from an insolvent corporation for feed-stuff consumed in its business just before the appointment of a receiver is not a preferential charge on its property.

FROM the chancery court of Lamar county.

HON. THADDEUS A. WOOD, Chancellor.

George, appellant, was complainant or petitioner in the court below; Pigford and another, receivers, appellees, were defendants there. From a decree denying the prayer of the petition, the petitioner appealed to the supreme court.

The Pearson Lumber Company, an insolvent corporation, and all of its property, had been placed in the hands of receivers, and Pigford and another, appellees, were the receivers. George, appellant, petitioned the chancery court for an order directing the receivers to pay the debt due him by the lumber company as a preferential one. His debt was contracted by the corporation shortly, all of it within three months, before the

appointment of the receivers and was due for feed-stuffs used by the corporation in feeding its oxen and other live stock and without which its business could not have been carried on at all.

*G. B. Neville* and *Baskin & Wilbourn,* for appellant.

Appellant's petition was filed under the authority of *LeHote v. Boyet,* 85 Miss. 636, and cases of *Drennen v. Mercantile, etc., Co.* (Ala.); 23 South. 164; *Forsdick v. Schall,* 99 U. S. 235, 25 L. Ed. 339; *Burnham v. Bowen,* 111 U. S. 776; *Southern R. Co. v. Carnegie Steel Co.,* 176 U. S. 257, and kindred cases.

In *LeHote v. Boyet, supra,* in the matter of the receivership of a private corporation such as a lumber company, the claims of the laborers within six months of the receivership necessary to continue the business and preserve the property of the corporation, were accorded priority of payment over both ordinary and mortgage creditors. It appears from the statement of the case that the prayer of the laborers that their claims be ordered paid in preference to all other creditors was granted. This case settles the proposition that the same principles, applicable to the claims of laborers and those furnishing supplies, within six months of the receivership in railroad receivership cases, shall govern in those cases where the corporation is but a private corporation.

It settles, also, the proposition that the priority of payment exists not only as against creditors having liens, but against all other ordinary creditors.

It settles as well the proposition that these equitable principles govern whether the private corporation was put into the hands of a receiver at the instance of mortgage creditors or not, because it appears from the statement of facts in the case of LeHote that the corporation itself made a partial assignment for the benefit of its creditors, which did not give preferences, but which recognized existing liens on the property conveyed.

If the priority is a priority existing against ordinary creditors, then it seems to us immaterial whether or not there are any lien creditors or mortgage creditors when the property of the corporation is placed in the hands of a receiver. Surely the question of priority of payment to laborers, and supply account for current expenses within six months of the receivership, is not made to depend on whether or not there were any mortgage claims against the property, but upon the fact that the supplies furnished and the services of the laborers were necessary to continue the business and preserve the property to the creditors and indeed were instrumental in creating it to a large extent, and were claims, which it was reasonably within the implied contemplation of the parties should be met out of the current earnings of the corporation as current expenses and claims for supplies and services, which operated to enhance and preserve the value of the estate, to which creditors, whether mortgage or ordinary must look for payment of their debts. If the contention that there were no mortgage creditors who had applied for a receivership had been maintained in the *LeHote case,* the claims of the laborers in that case could not have been allowed any priority because there were no mortgage creditors who had applied to have the corporation put into the hands of receivers in the *LeHote case.*

*Frank Johnston* and *John C. Street,* for appellees.

The equity doctrine of the allowance of preferential claims for wages and materials supplied to insolvent railroad corporations had its origin in the decision of Judge Drummond, in 1878, in the case of *Turner v. Railroad Company,* 8 Biss. 315. This was an Illinois case, and there was an Illinois statute which gave the claims of materialmen and laborers certain preferences against railroad corporations in certain instances, but not *eo nomine* in receiverships. Judge Drummond's decision proceeded upon the primary consideration that a railroad corpora-

tion, because the public was widely interested, should be treated in a receivership as a going concern. The doctrine had its origin in railroads, and upon the great weight of reason, and authority, it has a restricted limitation and application to railroads.

Judge Drummond, in announcing the *basis* and *principle* of his decision in *Turner v. Railroad Co.,* 8 Biss. 315, said: "It would be well nigh impossible, looking at things as they actually exist, to operate the roads by receivers without some allowance for claims of the character mentioned," (labor and material), "existing at the time of their appointment, and that the limitation already stated," (the time limit before the receivership), "is not an unreasonable one in view of all the circumstances."

This equity doctrine, as applied, and limited, to railroads, was soon afterwards announced by the supreme court of the United States in the leading case of *Fosdick v. Schall,* 99 U. S. 235, which was also an Illinois case. In *Fosdick v. Schall,* the preferential claim was for new cars sold to the railroad company with title reserved in the vendors. The court held that this reservation of title was good against the mortgagees of the railroad, and operated as a preferential claim.

The court held that the claim was to be paid out of the gross income, and this against the mortgagees of the income, as the contemplation of the mortgage contract was that operating expenses were to come out of the gross income. This was the precise point involved. The court, however, went into a consideration of the question of wages and material as preferential claims, in railroad receiverships, and expressly, and clearly, placed the doctrine on the primary and fundamental principle, that a railroad was a *quasi*-public corporation, owing great duties to the public, and for that purpose invested by the public with great franchises, and it was of imperative necessity, for the public interests that it should be kept as a "going concern."

In this connection, attention is called to the fact that Judge Drummond, in the *Turner case,* alluded to the Illinois statute as furnishing an analogy for the equitable doctrine in railroad receiverships.

Thus the doctrine in equity had its origin in Judge Drummond's decision, and was invested with authority by the supreme court of the United States in the leading, and the controlling, decision, *Fosdick v. Schall,* 99 U. S. 235.

The opinion of this court in *LeHote v. Boyet,* 85 Miss. 642, states the ground of the decision, thus: "We think this case falls squarely within the principles announced in *Fosdick v. Schall,* 99 U. S. 235, *Burnham v. Bowen,* 111 U. S. 776, and *Southern R. Co. v. Carnegie Steel Co.,* 176 U. S. 257, all of which relate to railroads; and *Drennen v. Mercantile Trust & Deposit Co.,* 115 Ala. 592, and *Dickenson v. Saunders,* 129 Fed. 16, which relates to private corporations."

The case of *Dickenson v. Saunders,* 129 Fed. 16, was the case of a steamboat company operating a steamboat line as a common carrier. That was a Massachusetts case, decided by Judge Putnam, United States circuit judge, and the ground of his decision was a statute of Massachusetts giving liens or preferences in respect to insolvent corporations. Judge Putnam followed the Massachusetts statute and applied it, following the state court decision in *Jones v. The Arena Publishing Co.,* 171 Mass. 22, which case proceeded expressly upon the Massachusetts statute of 1890, ch. 321, which gave preferences in cases of insolvency and receiverships.

This leaves for consideration the case of *Drennen v. Mercantile Trust & Deposit Co.,* 115 Ala. 592, 23 South. 164, in support of the ruling in *LeHote v. Boyet.* In that case, there was a divided court, Judges Coleman and Head dissenting in an opinion based upon the authorities and upon a course of unanswerable reasoning.

The decision in the *Drennen case* proceeds upon the erroneous

assumption, that there is no difference, or distinction, in the application of this doctrine between railroad properties and private concerns.

In fact, the entire history of the doctrine is a demonstration of the proposition that it began in *Fosdick v. Schall,* in the supreme court of the United States (subsequent to *Turner v. Railroad Co.,* 8 Biss. 315), in its application to receiverships in railroads, and had its exclusive limitation to railroad properties; that it arose, *ex necessitate rei,* out of the peculiar character of railroads, and that the exigency and the principle upon which it had its origin has no application logically, or correctly, to any other character of property.

The whole doctrine as applied to railroad property is *sui generis,* and it has this limited operation as shown by both the state and federal decisions upon this precise question.

It may be remarked in passing, that the Alabama court in *Merchant's Bank v. Moore,* 106 Ala. 646, 17 South. 705, in a well-considered opinion has held that the doctrine of *Fosdick v. Schall* was limited exclusively to railroads, and declined to apply it to any other property, and expressly declined to apply it to a manufacturing company.

The supreme court of the United States said in its opinion in *Wood v. Guarantee Co.,* 128 U. S. 416: "The doctrine of *Fosdick v. Schall,* has never yet been applied to any case except that of a railroad. The case lays great stress on the consideration that a railroad is a peculiar property of a public nature and discharging a great public work. There is a broad distinction between such a case and a purely private concern."

The attention of the court is particularly invited to the language of Judge Simonton in *Bound v. South Carolina R. Co.,* 50 Fed. 312, in the circuit court for the district of South Carolina; involving the doctrine as applicable to a navigation company, and in which the court declined to apply the rule to a steamship line.

The ruling of the Alabama *Drennen case,* in extending the doctrine to private concerns, if correct in principle, can have no limitation.    It would be applicable not only to private corporations, but to the business concerns of individuals.    In *LeHote v. Boyet,* it was applied to a private lumber corporation. If this is correct, then it would apply to a brick yard, a stave factory, a hotel, a department store, and *ad infinitum* to every variety of business concern.

The doctrine established in its origin, and in its application, as has been seen, should be accepted with its intrinsic and defined limitations, and the proposed *extension* of this peculiar and limited doctrine, is, in effect, the making or creation of a new doctrine of general equity cognizance.

The court should review the subject and restrict the doctrine as announced in the former decision.

Argued orally by *R. E. Wilbourn,* for appellant, and by *Frank Johnston,* for appellee.

ANDERSON, J., delivered the opinion of the court.

Until the decision of the cases of *Drennen & Co. v. Mercantile Trust & Deposit Co.,* 115 Ala. 592, 23 South. 164, 39 L. R. A. 623, 67 Am. St. Rep. 72, and *LeHote v. Boyet,* 85 Miss. 636, 38 South. 1, the doctrine of *Fosdick v. Schall,* 99 U. S. 235, 25 L. Ed 339, had been confined by the courts of this country exclusively to receiverships of insolvent railroad corporations. In the *Drennen case* the Alabama court extended the doctrine to claims of laborers against insolvent private corporations in the hands of receivers, and was followed by this court in the *LeHote case,* in which the claims given preference were those of laborers in and about the sawmill plant, a private corporation in the hands of a receiver, for their services performed within the period of four months before the receivership, and which were necessary to continue the business and preserve the property of

the corporation. This court placed the allowance of such claims as preferences on the second ground stated by the supreme court of Alabama in the *Drennen case,* as follows: "Second, that whether, strictly speaking, there has been any diversion of gross earnings from the employes, directly or indirectly, to the bondholders, or not, the operatives and laborers have performed services and labor in the improvement and betterment of the mortgaged property, so that such labor and services have inured directly to the benefit of the bondholders, in the enhancement of the value of their security, and hence of their bonds, they thereby securing, in addition to the property embraced in their mortgages, the value of the services of the company's operatives and laborers, which value belongs to such operatives and laborers, and would have been paid to them, it is to be assumed, by the corporation, out of its gross earnings, but for the intervention of the bondholders, and the appointment at their instance of the receiver."

We decline to extend the doctrine beyond the claims of laborers, the wage class, who are favored by law, and justly so, as illustrated by our statutes giving the laborer a lien on crops produced by him, and providing that there shall be no exemption from liability to judgment for labor performed, and also by the common law, which gives laborers who receive chattels for repair, at the request of the owner, the right to retain same as security for their debt. 19 Am. & Eng. Ency. of Law (2d ed.) 8. There is no difficulty in applying the doctrine in question to the claims of laborers; while, on the other hand, great injustice and inequality would result in its application to any other class of claims. To illustrate: In the instant case, the appellant is a merchant seeking a preference for feed stuff furnished this sawmill corporation with which to feed its oxen, to enable them to haul logs to the mill to be sawed into lumber, which lumber was on hand at the time of the appointment of

the receiver.   Why should such a claim be preferred over that of any other unsecured creditor?   Why over the claim of another merchant, who furnished the company clothing and food for the laborers in its employ, who cut the trees and drove the oxen back and forth in hauling logs to the mill?   Why over the claim of a bank which loaned the concern money with which to buy materials to go into the betterment of the plant, or with which to buy timber to be sawed into lumber?   Or any other indebtedness incurred, which directly or indirectly contributed to keeping the plant a going concern, and to continue or increase the income therefrom?   We can conceive of no indebtedness necessarily incurred about the business which would not contribute to that end.

*Affirmed.*