## BISSO TOWBOAT CO. v. LOUISIANA RY. & NAV. CO.

Circuit Court of Appeals, Fifth Circuit.
April 15, 1929.

No. 5433.

Philip S. Gidiere, of New Orleans, La. (Spencer, Gidiere, Phelps & Dunbar, of New Orleans, La., on the brief), for appellant.

R. E. Milling, Jr., of New Orleans, La. (Milling, Godchaux, Saal & Milling, of New Orleans, La., on the brief), for appellee.

Before WALKER and BRYAN, Circuit Judges, and BORAH, District Judge.

PER CURIAM. This is a libel in admiralty, which the District Court dismissed for delay in prosecution; but as it appears that, after a motion to dismiss was filed by appellee, both sides proceeded with the taking of testimony, and that motion was not called up for disposition until the final hearing, we proceed without further comment to a consideration of the case on its merits.

The libel was brought by appellant to recover damages for the sinking of its tug as a result of its running upon a cluster of submerged piling which had been placed by the appellee railroad company in the Mississippi river as a part of a ferry landing for railroad cars at Angola, La. Appellee maintains a ferry across the river between Angola, on the east side, and Naples, on the west side, in connection with its line of railroad. The cars are carried across on barges about 300 feet long, which are equipped with a double track and are capable of taking 12 cars at a time. An incline leads from the bank of the river down to the water, and, as there is a difference of 30 or 40 feet between extreme high and low stages of water at Angola, a movable section of track, called a cradle, which can be moved up and down the incline, is used, so as to provide a continuous track from shore to barge.

Clusters of piling are placed about 50 feet apart on a straight line, parallel with and about 35 feet downstream from the incline, so that, when a steamer or tug, lashed to the starboard quarter of a barge, rests against the piling, the bow of the barge fits into the cradle. The line of piling extended some 1,500 feet downstream and 200 feet beyond the end of the incline, but not more than 300 or 400 feet from the eastern shore of the river. During an extremely high stage of the water, appellant's tug was employed temporarily to tow one of the barges, while repairs were being made to the steamer regularly used for that purpose. Several clusters of piling were submerged by the flood waters, but the pilot of the tug was thoroughly familiar with the existence and location of the line of piling. After he had been engaged in this towage service 10 or 12 days, in making a landing at Angola he ran the tug onto the submerged cluster of piling that was next to the last from the shore.

The obviously safe method of approaching the landing was to keep the tug above the line of piling, and that was not done; instead, the pilot negligently attempted to cross that line, and thereby incurred the risk and danger of injury to the tug. An unsafe method was voluntarily adopted, when there was a safe method available.

On the ground that appellee was not liable, the decree dismissing the libel is affirmed.