LOGGANS *v.* LOVE.

(Division B.    Sept. 26, 1938.)

[183 So. 389.    No. 33299.]

W. Harold Cox, of Jackson, for appellant.

F. W. Bradshaw, Robert Burns, Jr., and Flowers, Brown & Hester, all of Jackson, for appellee.

**Anderson, J.,** delivered the opinion of the court.

The question involved in this case is whether appellant's unsecured claim against the Jackson Memorial Park, an insolvent corporation, is entitled, under the facts to be stated, to preference payment over the mortgage creditor of the property of the park. The Jackson Memorial Park is an incorporated modern cemetery a few miles out of the city of Jackson. It was organized in 1927. Soon after its organization, it issued and sold $35,000 of first mortgage bonds. The property of the cemetery consists of thirty-five acres of land, a residence thereon for the person in charge, and the other necessary equipment for the proper conduct of such an enterprise. Default in interest payments on the bonds began in 1932, and continued until September, 1937, when appellee, who was the holder of nearly all of the bonds, filed the bill in this case against the cemetery company and appellant, the superintendent in charge, for a foreclosure of the mortgage. There was no issue between the cemetery company and appellee. Appellant answered the bill, making his answer a cross bill in which he set up that the cemetery company was indebted to him for salary in the sum of $3,301.68, and, in addition, seeking to have the mortgage lien subordinated to his claim for salary for a period of six months prior to the filing of the bill and from that time until the foreclosure, upon the ground that his services were necessary to preserve the value of mortgage property, and were beneficial to the mortgagee instead of prejudicial.

Appellant owned fifteen shares of stock in the corporation, and his wife owned a like amount. Beginning a-

bout 1930, he was employed as superintendent and general manager of the cemetery, and continued in that capacity up to the time of the foreclosure. His compensation was a salary of $200 a month, and the right to occupy the residence on the grounds. He was a member of the board of directors of the corporation and was secretary. He had the right to and did hire and discharge the employees. He paid them their salaries with checks signed by him and countersigned by the president, Bufkin. He was principally manager, but did some manual labor incident to burials. Appellee applied for the appointment of a receiver to take charge of the property pending the litigation. The application was resisted by the cemetery company. No receiver was ever appointed. To sustain his contention, appellant relies on the principles laid down in LeHote, Receiver, v. Boyet, 85 Miss. 636, 38 So. 1, 3 Ann. Cas. 705. In that case the court held that where a receiver is appointed for an insolvent corporation, whether public or private, and its entire property is placed in his hands, he will be required to pay the wages of laborers who rendered services shortly before his appointment, and whose labor was necessary to continue the business of the corporation and preserve its property in preference to both ordinary and mortgage creditors. The property involved in that case was a sawmill and a railroad. In George v. Pigford, 97 Miss. 332, 52 So. 796, the LeHote Case and other authorities referred to in the opinion in that case were reviewed with the result that the court declined to extend the doctrine "beyond the claims of laborers, the wage class" The court used this language in that case:

"We decline to extend the doctrine beyond the claims of laborers, the wage class, who are favored by law, and justly so, as illustrated by our statutes giving the laborer a lien on crops produced by him, and providing there shall be no exemption from liability to judgment for labor performed, and also by the common law, which gives laborers who receive chattels for repair, at the request

of the owner, the right to retain same as security for their debt. 19 Am. & Eng. Ency. of Law (2 Ed.) 8. There is no difficulty in applying the doctrine in question to the claims of laborers; while, on the other hand, great injustice and inequality would result in its application to any other class of claims. To illustrate: In the instant case, the appellants are merchants seeking a preference for feed stuff furnished this sawmill corporation with which to feed its oxen, to enable them to haul logs to the mill to be sawed into lumber, which lumber was on hand at the time of the appointment of the receiver. Why should such a claim be preferred over that of any other unsecured creditor? Why over the claim of another merchant, who furnished the company clothing and food for the laborers in its employ, who cut the trees and drove the oxen back and forth in hauling logs to the mill? Why over the claim of a bank which loaned the concern money with which to buy materials to go into the betterment of the plant, or with which to buy timber to be sawed into lumber? Or any other indebtedness incurred, which directly or indirectly contributed to keeping the plant a going concern, and to continue or increase the income therefrom? We can conceive of no indebtedness necessarily incurred about the business which would not contribute to that end.''

Appellant was not a wage laborer; he was an officer of the corporation, and an important one—superintendent and treasurer, with the right to employ and discharge help. On the principles laid down in those two cases, appellant was only a common creditor of the corporation, and had no right of preference over lien creditors.

Appellant makes the further contention that the records of the company, including plats and maps and lot numbers, which records were not expressly covered by the mortgage, should have been subjected to the payment of his claim. Manifestly these records would be

without any legitimate value to anyone except the owner of the cemetery property. Alone they have no intrinsic value. They are in the nature of muniments of title. They go with the land.

Affirmed.