Joseph Robert **THORNTON** et ux.,
Libelants,

v.

**UNITED STATES** of America,
Respondent.

No. 2666(S) (C).

United States District Court
S. D. Mississippi, S. D.

Feb. 27, 1964.

As Amended March 14, 1964.

Morse & Morse, Stanford Morse, Gulfport, Miss., for libelants.

## 652

Robert E. Hauberg, U. S. Atty., Jack McDill, Jackson, Miss., for respondent.

WILLIAM HAROLD COX, Chief Judge.

This is a suit under the "Suits In Admiralty Act," as amended September 13, 1960, (appearing as 46 U.S.C.A. § 742) for the loss of a fishing vessel, ("Lucky Lindy") occasioned by its striking a submerged piling in the coastal waters of Mississippi Sound. There is no controversy as to jurisdiction in this case. The United States contends that it had no liability for this loss because it had no interest in, or control over the submerged piling which did the damage.

### FINDING OF FACTS

The "Lucky Lindy" was a wooden motor fishing vessel owned by Joseph Robert Thornton and his wife. Thornton is a commercial fisherman on the Mississippi Gulf Coast. He made his living out of fishing in the inland waters of the Gulf Coast and in the vicinity thereof for forty-two years. On December 17, 1962, Thornton was in charge of this vessel with a crew of two other persons dredging for oysters near Grand Island in the Mississippi Sound. A heavy fog prevailed during the entire day, and visibility was limited to ten to fifteen yards with no appreciable wind or sea.

About 3:00 P.M. on said date, Thornton decided to stop gathering oysters, and to seek shelter from the winds and tide which usually prevailed in December by tying up in nearby Heron Bay. He could see no landmark at the time, and was uncertain of his exact position. He maneuvered enroute to his destination by compass, and his general knowledge of the area without any map to guide, or assist him. Thornton thus traveled approximately 4½ miles, when about 3:30 P.M. this wooden craft struck a submerged piling (shown on Respondent's Exhibit #1), approximately three hundred feet off the southern tip of Lower Point Clear, and sank in approximately six feet of water and was lost. The "Lucky Lindy" had crossed the intracoastal waterway, and was seeking to avoid the traffic therein by hugging the shoreline, and was traveling about five miles per hour at the time. A lookout on the front of the vessel was taking soundings for depth, and directing the course of the skipper, but did not see this particular concrete piling in a steel case submerged under two or three feet of water.

This piling formerly constituted one of the supports for a part of a boat house which was constructed years ago at the southern end of a pier which extended from the shore of Lower Point Clear whereon there existed for many years the Lake Borgne lighthouse.

This lighthouse was constructed and put in operation more than seventy years ago. The respondent ceased using this lighthouse, and pier facility prior to 1946, and such improvements were then in poor condition. In September 1947, and again in 1948, a storm wrecked the lighthouse and the pier. A government survey on June 15, 1950, indicated the existence of this pier and boat house in very poor structural condition. The respondent sold to John Beals on January 31, 1951, the one acre tract of ground on which the lighthouse was situated by metes and bounds description. John Beals purchased the property for $277.50 to construct a fishing camp on it, and intended to repair the wharf for use as a fishing pier. No improvements were ever constructed, or repaired by the purchaser, and the pilings continued to decay as shown on Libelants' Exhibit #2, so that in the intervening twelve year period after said sale, only about one-half of the north end of the supports of the pier closest to the land extended above the water. The respondent never had any control over this offending piling after January 31, 1951. The respondent never erected any warning on the surface of the water of the existence of this submerged piling, and was never requested to do so. It did, however, accurately chart the location of this offending piling within the circumference of the dotted circle shown on Respondent's Exhibit

#1. The libelants had notice equivalent in law to knowledge of the existence and location of these submerged pilings. Thornton thus proceeded on the course indicated to his destination instead of taking a more direct and northwesterly course which would have avoided this small dangerous area where the vessel met its fate. The channel through Grand Island Pass is well marked by buoys and lights.

Libelants purchased the "Lucky Lindy" in 1955 for $4,705.00. Three years later they installed a new diesel marine motor in this craft at the cost of $3,300.00 with one thousand dollar trade-in allowance for the old motor. Thornton had made extensive repairs, and replacement and changes to the craft so that on December 17, 1962, it had a fair and reasonable market value of eighty-five hundred dollars which was completely lost. The "Lucky Lindy" had eighty barrels of oysters on board at the time of this accident. It had a capacity for approximately two hundred and fifty barrels of oysters.

The libelants failed to prove by a preponderance of the evidence that the respondent was guilty of any negligence which proximately caused, or contributed to this accident. The United States did nothing to create such danger to such use of said shallow waters under such existing circumstances. It never undertook to do anything about marking on the water the location of said piling, and never did anything toward removing any of said piling from the water. The entire property, including these pilings as valuable muniments of title, were sold to this sportsman for his use, and it had a substantial value at the time for the construction of a pier to a fishing lodge as contemplated. The United States of America had no duty to remove said piling from said site after said sale of said property.

## CONCLUSIONS OF LAW

The Court has full jurisdiction of the libelants and the respondent, and this controversy, under the Suits In Admiralty Act, last amended September 13, 1960, appearing as 46 U.S.C.A. § 742.

This submerged piling which did this damage passed with the title to this land to Beals in 1951 as a muniment of title to the acre of land to which the facility was an adjunct. Cf: Loggans v. Love, 183 Miss. 97, 183 So. 389, 390; Evans v. City of Jackson, 201 Miss. 14, 28 So.2d 249, 252. Surely, if the respondent had any duty to mark said submerged piling on the surface of the water during its ownership and control of said land, that duty did not exist after the sale. Nothing is cited to the Court contrary to that view. It must be presumed in this age of myriad litigation, that if such were the law that counsel could have found it, and would have cited it. Libelants rely upon Picton & Co. v. Eastes, (5 CCA), 160 F.2d 189, but that case is vastly different on its facts. The submerged object in that case was in the Gulf of Mexico, and was not charted, and its location was not known by libelants. The object was approximately two miles from shore, and was still under control of the respondent who had unsuccessfully undertaken to make it safe to navigation. Thornton knew of the existence of said submerged piling at said point and it devolved upon him to avoid said dangerous area. The sea and the weather on this occasion were calm, but the crew member in the bow of this craft with a sounding pole, did not detect the presence of the submerged piling until after the craft was lodged upon it, and could not be extricated. These pilings were several hundred yards north of the main channel in said area, and did not obstruct, or interfere with navigation. The respondent had no duty as a matter of law to have removed said submerged piling from the water after the sale of said property to Beals.

The libelants were negligent in entering this dangerous area when visibility was so low, and at an excessive rate of speed under the circumstances, particularly when a safer course was available to them at the time. Cf: Bisso

Towboat Co. v. Louisiana Railway & Navigation Co. (5CCA), 31 F.2d 981.

The respondent did not owe the libelants any legal duty as to safety, and had no legal responsibility to libelants for this danger in this area under the circumstances on December 17, 1962.

Accordingly, it is the opinion of the Court that this accident was the proximate result of the sole negligence of the libelants, and that the respondent was not guilty of any negligence which proximately contributed thereto; and that the complaint is thus without merit and should be dismissed with prejudice at libelants' cost.

An order accordingly may be presented for entry.