254 So.2d 741 (1971)
The TRAVELERS INDEMNITY CO. and Leflore Bank & Trust Co.
v.
Travis H. CLARK, Jr., Receiver of Stigler Construction Co., Inc.
No. 46348.
Supreme Court of Mississippi.
November 8, 1971.
Rehearing Denied December 6, 1971.
*743 Cox & Dunn, Ltd., Jackson, Lott, Sanders & Gwin, Greenwood, for appellants.
Travis H. Clark, Jr., Greenwood, for appellee.
*742 GILLESPIE, Chief Justice:
In this case several questions arise involving the laws of suretyship and the Uniform Commercial Code.
In the latter part of 1968, Stigler Construction Company, Inc., (Stigler) a contractor, entered into three separate and distinct construction contracts totaling in excess of three hundred thousand dollars, one to be performed in and for Yalobusha County, one in and for Webster County, and the other with Chiwapa Watershed Improvement Drainage District in Pontotoc County. These contracts will be referred to as Yalobusha, Webster and Chiwapa respectively. Each contract was subject to Mississippi Code 1942 Annotated sections 2919 and 4703, which require the execution by the contractor of a surety bond guaranteeing faithful performance of the contract and prompt payment of persons supplying labor and materials. The contracts provided payments to be made to Stigler as the work progressed (progress payments) in an amount equal to ninety percent of the work completed to the date of each monthly progress estimate, with the balance of the contract proceeds (10%) to be held by the owner as retainage until it was ascertained that all work was completed and suppliers and laborers paid. The Travelers Indemnity Company (Travelers) was the surety on each of these bonds. Each written bond application by Stigler to Travelers contained provisions for indemnification and reimbursement on account of all losses, expenses and attorneys' fees. Each application assigned to Travelers as security all sums that may be due under the contract. The assignment also secured "the obligations hereunder and any other indebtedness and liabilities of the applicants to the sureties whether heretofore or hereafter incurred."
Stigler completed each contract in the latter part of 1969, but defaulted by failing to pay all of the claims of persons supplying materials and labor. Stigler filed a statement of intent to dissolve and made application under the authority of Mississippi Code 1942 Annotated section 5309-204 (1956) to the Chancery Court of Leflore County to have its liquidation continued under the supervision of the court. *744 On November 14, 1969, the Chancery Court of Leflore County appointed Travis H. Clark, Jr., receiver of Stigler, and he thereupon qualified and entered upon his duties. This appeal is prosecuted by Travelers, as surety for Stigler, and by the Leflore Bank & Trust Company, a creditor of Stigler.
In the manner and at the times hereinafter stated, the receiver received $7,342.41 of the proceeds of the Webster County project, $8,191.13 of the Yalobusha County contract, and $54,801.94 of the Chiwapa contract, these proceeds consisting of both retainage and progress payments. Travelers claimed priority to these funds, as against general creditors, to the extent of the claims paid by it to suppliers of materials and laborers, plus expenses and attorneys' fees. Its claims were for $8,459.49, plus legal expenses of $793.60, on the Webster County contract; $12,217.35, plus $793.60 legal expenses on the Yalobusha County contract, and $23,943.03, plus $4,761.64 legal expenses on the Chiwapa contract.
Leflore Bank & Trust Company filed claims in the receivership proceedings totaling $132,623.42, claiming priority on certain items and funds as more fully disclosed hereinafter. The chancellor allowed Travelers' claim as a general or unsecured creditor except for $21,974.28, which was the retainage in the hands of the owner on the Chiwapa contract at the time the receiver was appointed. The chancellor disallowed Bank's claim to priority except as to certain real estate on which it had a lien and which is not involved in this appeal. Travelers and Bank perfected appeals to this Court, raising various questions which hereinafter will be considered and decided separately.

I.

Travelers' Claims
The following table shows the significant dates and figures involved in Travelers' claims:

 Contract
 Contract Proceeds Labor & Attorneys'
 Proceeds held by Material fees & legal
 Date Contract on each receiver Claims expenses of
 proceeds job now that represents paid on Travelers allocated
 paid held by 10% each job to
 by owner Receiver retainage by Travelers each job 
Webster 11/12/69 $7,342.41 $5,613.44 $ 8,459.47 $ 793.60
Yalobusha 10/13/69 8,191.13 5,583.21 12,217.35 793.60
 | 10/10/69 22,520.24 23,943.03 4,761.64
Chiwapa 
On July 31, 1969, Travelers wrote the owner on the Yalobusha County contract that "This shall be your authority to pay to the above contractor, all monies due under the above project," and on August 28, 1969, a similar letter was sent the owner on the Webster County project. The final payments on these contracts were paid to Stigler on the dates and in the amounts shown on the above table. No such letter was written concerning the Chiwapa contract and the amounts due thereon were paid as shown on the above table. Stigler opened a new bank account and deposited therein the payments made on the three projects before appointment of the receiver. This separate account was taken over by the receiver and continued as a depository. All deposits were made in this account in the amounts shown on the above table and these funds have not been commingled with any other funds.

*745 The Chiwapa Claim

Was Travelers' claim on the Chiwapa contract limited to the ten percent retainage?
Upon his appointment, the receiver took over a new and separate bank account belonging to Stigler which included $22,520.24, representing the amount Stigler had received from the owner of the Chiwapa contract on October 10, 1969, for partial work completed. At this time the owner on the Chiwapa contract still owed Stigler the sum of $32,281.70, consisting of $21,974.21 retainage and the balance in progress payments. Travelers had paid out for labor and materials claims on the Chiwapa contract the sum of $23,943.03.
The chancellor allowed Travelers' claim only as a general creditor entitled to participate prorate except for the ten percent retainage of $21,974.21, which was allowed and paid to Travelers free and clear of all expenses. In thus limiting Travelers' claim, the chancellor held that Travelers' subrogation rights were limited to the ten percent retainage because its assignment security (in the application for the surety bond) was not perfected by filing as required under the Uniform Commercial Code.
The question first stated has two points of inquiry, the first being whether Travelers' subrogation rights are limited to retainage. In arguing for such limitation, the receiver relies upon State for Use of National Surety Corporation v. Malvaney, 221 Miss. 190, 72 So.2d 424 (1954); Southern Surety Company v. Greenville Bank & Trust Co., 154 Miss. 412, 122 So. 529 (1929); Canton Exchange Bank v. Yazoo County, 144 Miss. 579, 109 So. 1 (1926), and First National Bank of Aberdeen v. Monroe County, 131 Miss. 828, 95 So. 726 (1923). In the Monroe County and Greenville Bank & Trust Company cases the contest was between an assignee of the contractor and the surety, and the Court held that the surety's subrogation rights were inferior to the Bank's right to the progress funds arising out of the assignment. These cases did not, however, involve a surety's right to be indemnified from unassigned progress funds and, therefore, are no authority for the proposition that unassigned progress funds are not available to indemnify the surety for its losses. The other two cases relied on by the receiver likewise offer no authority for the present question inasmuch as those cases involved only retainage funds.
The unassigned funds in the amount of $32,281.70 still in the hands of the owner of the Chiwapa contract at the time of default and at the time the receiver was appointed were ample to indemnify the surety for its losses on that project. It was not only the right but the duty of all parties to use the full amount of the funds to pay suppliers of materials and laborers. Travelers paid these obligations and was therefore entitled to be indemnified for the sums so paid out. We hold that there is no reason to limit the surety's equitable right of subrogation to the ten percent retainage and that all funds in the hands of the owner at the time of the appointment of the receiver were available to Travelers to the extent necessary to indemnify it for losses sustained on that project.[1]
The second point of inquiry is whether the filing requirements of the Uniform Commercial Code apply to the equitable right of Travelers to be indemnified for its losses. We are of the opinion that it does not.
The rights of the surety to subrogation for its losses are founded on equitable principles independent of any assignment of contract proceeds in the application of the contractor. The assignment in a bond application is in aid of an equitable right; it does not create that right. Farmers' Bank v. Hayes, 58 F.2d 34 (C.A. 6, *746 1932). Upon what appears to be the soundest reasoning and the weight of authority, we hold that a surety's right of subrogation is unaffected by the filing requirements of the Uniform Commercial Code. Home Indemnity Co. v. United States, 433 F.2d 764 (Ct.Cl., 1970); National Shawmut Bank of Boston v. New Amsterdam Casualty Co., 411 F.2d 843 (C.A. 1, 1969); National Surety Corp. v. State National Bank, 454 S.W.2d 354 (Ky. 1970); Aetna Casualty & Surety Co. v. Perrotta, 62 Misc.2d 252, 308 N.Y.S.2d 613 (N.Y. 1970); Jacobs v. Northeastern Corp., 416 Pa. 417, 206 A.2d 49, 11 A.L.R.3d 1220 (1965); Gilmore, Security Interests in Personal Property, Vol. 1, § 11.1, pp. 336-337 (1965).
Travelers' Claims on the Webster and Yalobusha Projects
The next question is whether Travelers waived its right to subrogation and indemnification on the Webster and Yalobusha County projects.
On July 31, 1969, Travelers wrote the owner of the Yalobusha County project that "This will be your authority to pay to the above contractor, all monies due under the above project." A similar letter was written to the owner of the Webster project. At that time Travelers did not know that Stigler had not paid suppliers of material and labor. Pursuant thereto the owner, on October 13, 1969, made final payment of the Yalobusha County project, and on November 12, 1969, made payment of the final amount due on the Webster County project. Stigler deposited said sums of $8,191.13 and $7,342.41 respectively, in the special bank account already mentioned, which was taken over by the receiver and which account is still intact without intermingling with other funds not connected with the three construction contracts.
There is no statement in the letters from Travelers to the owners that it intended to waive indemnification if required to pay materialmen and laborers. It only authorized final payment with no knowledge of default on the part of Travelers that Stigler was in default or would fail to use the funds to pay the suppliers of material and labor. The chancellor held that the said letters amounted to a waiver on behalf of Travelers of its rights to subrogation and indemnity from said funds thus paid to Stigler by the owners, and that Travelers would share on these claims only as a general creditor.
The suppliers of materials and labor on private contracts are a favored class of creditors and have a lien on the thing created. Although not allowing liens on public works, the legislature has provided that the contractor on public contracts shall furnish a surety bond assuring faithful performance of the contract and prompt payment of suppliers of materials and labor. These materialmen and laborers are thus favored over other creditors of the contractors by virtue of the bond requirements under the statute, the surety bond itself, and the contract.
When Webster and Yalobusha Counties paid the final payments under the contracts to Stigler, it became Stigler's duty to turn over the payments to the unpaid materialmen and laborers. The surety had a right to assume that this duty imposed by law and contract would be discharged in the event they had not already been paid. Stigler failed to pay the materialmen and laborers and a receiver was appointed. The surety, who paid the materialmen and laborers in accordance with the statute, the contract, and the surety bond, acquired an equitable lien on the funds in the hands of the contractor. Martin v. National Surety Co., 300 U.S. 588, 57 S.Ct. 531, 81 L.Ed. 822 (1937); 17 Am.Jur.2d, Contractor's Bonds § 42, 221 (1964); 43 Am.Jur., Public Works and Contracts § 200, 943 (1942). In our opinion the segregated funds in the contractor's hands were subject to the equitable lien on the surety against common creditors of the contractor, and the intervention of the receivership *747 did not affect the surety's equitable lien. Cf. L'Hote, Receiver v. Boyet, 85 Miss. 636, 38 So. 1 (1905). We hold, therefore, that Travelers did not waive its right to indemnification. Since its claims exceeded the amounts held by the receiver as final payments on the Yalobusha and Webster County projects, the full amounts held shall be paid to Travelers.
Travelers' Claim to Cross-Indemnification
The bond applications contained an assignment to Travelers by Stigler of the proceeds of the contract to secure not only the obligations of the contractor under the particular contract, but any other obligation and liability of the contractor to the surety. Under this provision, Travelers claims that since the funds available on the Webster and Yalobusha contracts are insufficient to indemnify it, then it is entitled to be indemnified from the proceeds of the Chiwapa contract. Travelers relies on Horne v. State Building Commission, 233 Miss. 810, 103 So.2d 373 (1958). The Horne case, supra, is distinguishable, however, inasmuch as the owner, contractor and surety were the same in the two contracts involved. In the present case, we have three different owners. The case is further distinguishable because Horne was decided before the enactment of the Uniform Commercial Code.
We hold that the assignment contained in the bond application may not be used to create a security interest in the proceeds of an entirely independent and different construction contract unless there is compliance with provisions of the Uniform Commercial Code. When the surety seeks to use the assignment in the bond applications to reach beyond the immediate contract so as to claim a security interest in another contract involving another owner, the assignment loses its identity as an aid to the equitable lien which a surety of a defaulting contractor has. The assignment thereupon becomes, to the extent that such cross-indemnification is claimed thereunder, a mere financing transaction subject to the filing requirements of the Uniform Commercial Code.
Motion for Attorneys' Fees
The motion of Travelers for additional attorneys' fees for services rendered in this Court is sustained and allowed for one-half the amount allowed in the trial court, that is, $2,250 on the Chiwapa project, $375 on the Webster County project, and $375 on the Yalobusha County project.
II.
Claims of Leflore Bank & Trust Company
Leflore Bank & Trust Company (Bank) filed a claim in the receivership proceedings for $121,838.00, plus interest and attorneys' fees, which total indebtedness consisted of the following separate items, to-wit: (1) An indebtedness evidenced by note for $100,000, with interest at the rate of 8% per annum after May 15, 1969, providing for 10% attorneys' fees; (2) Note for $20,000, with interest at the rate of 8% per annum from May 26, 1969, and providing for 10% attorneys' fees; (3) Note for $1,538, with 8% interest per annum from September 18, 1969, providing for 10% attorneys' fees; and (4) A note for $300, with interest at the rate of 8% per annum from October 16, 1969.
The chancellor allowed Bank's claim as a general creditor with interest to the date of the receivership, plus attorneys' fees as stated hereinafter.
Bank's Claim to 10% Attorneys' Fees
The $100,000 note, the $20,000 note, and the $1,538 note provided for the payment of 10% attorneys' fees of the principal of the note if placed in the hands of an attorney for collection. There was no provision for attorneys' fees on the $300 note. The Bank agreed to pay its attorneys for the collection of their notes a reasonable fee for their services. The chancellor allowed *748 an attorneys' fee of $6,000 instead of $12,153.80 (10% of the principal amount of the three notes) claimed by the Bank. The receiver contends that the court acted within its discretion in setting such attorneys' fees at a figure less than the ten percent stipulated in the notes, but fails to cite any authority justifying reducing the attorneys' fees below that contracted for in the notes. Absent a showing that the Bank would make a profit on the provisions in the note regarding the attorneys' fees, and absent a showing that the attorneys' fees were unreasonably high, we hold the contract was enforceable and that the Bank is entitled to the ten percent attorneys' fees stipulated in the notes. Powell v. Sowell, 245 Miss. 53, 145 So.2d 168 (1962); Peoples Bank & Trust Co. v. Garner, 218 Miss. 72, 65 So.2d 273 (1953); Burt v. Brashears, 118 Miss. 339, 79 So. 182 (1918); Brahan v. First National Bank, 72 Miss. 266, 16 So. 203 (1894).
Is the Bank Entitled to be Preferred Over General Creditors for the $20,000 Note?
On May 26, 1969, prior to the appointment of the receiver on November 14, 1969, Stigler, acting through its president, made application to the Bank for a loan of $20,000. Stigler represented that it was necessary for it to make said loan in order to pay its employees on the Chiwapa project and in order to complete said project. Stigler agreed that if Bank did make said loan, it would pay Bank out of the Chiwapa contract proceeds during the period from June 1, 1969, to December 1, 1969. Bank relied on said representations and loaned Stigler the $20,000. Stigler maintained two bank accounts in the Leflore Bank & Trust Company, one of which was a regular account and one a payroll account. On May 26, 1969, Stigler deposited the $20,000 borrowed from Bank in its regular account in said bank in which other funds had been and were thereafter deposited until the receiver was appointed. Stigler transferred approximately $3,000 each week from its regular account to its payroll account in order to pay its labor on the Chiwapa project and to meet other payroll expenses. In excess of $20,000 was paid on labor on the Chiwapa project from May 26, 1969, to November 14, 1969.
Bank relies on L'Hote v. Boyet, 85 Miss. 635, 38 So. 1 (1905). In that case a lumber company became insolvent and a receiver of its assets was appointed by the chancery court on a petition filed by its creditors to whom the company was indebted for labor performed for the corporation in the four months preceding the appointment of the receiver. The Court upheld the claims of the laborers as a preference claim having priority over both unsecured and secured creditors of the insolvent private corporation.
In George v. Pigford, 97 Miss. 332, 52 So. 796 (1910), claim was made against the receiver seeking preference over general creditors. The debt involved in that case was contracted by the insolvent corporation within three months prior to the appointment of the receiver, and was due for feed stuff used by the corporation in feeding its oxen and other livestock, and without which its business could not have been carried on. The Court stated:
We decline to extend the doctrine beyond the claims of laborers, the wage class, who are favored by law, and justly so, as illustrated by our statutes giving the laborer a lien on crops produced by him * * * (97 Miss. at 339, 52 So. at 797).
The Court stated there was no difficulty in applying the doctrine in question to the claim of laborers, but that great injustice and inequality would result in its application to any other class of claims.
In the present case some of the funds were used to pay laborers, but it is not shown what particular funds were used to pay any particular operating expenses on the Chiwapa project. The sum of $3,000 per week was transferred to the payroll account from the account into which the bank loan proceeds were deposited. Therefore, *749 over a period of approximately six months, from $70,000 to $80,000 passed through the payroll account. Under these circumstances, the chancellor was correct in denying Bank's claim as one having priority over general creditors. Assuming, arguendo, that if Bank had actually paid the laborers, then it would have been sugrogated to their equitable claim; however, that did not happen. The Bank did not pay the laborers and no identifiable amount of Bank's claim was paid to laborers.
Was the Bank Entitled to the Proceeds of the Sale of Two Motor Scrapers?
The $20,000 note owed by Stigler to Bank was secured by a security agreement conveying a security interest in two Allis-Chalmers Motor Scrapers, as particularly described in the instrument. The receiver sold the two motor scrapers for $8,150, and Bank claims that said sum should have been paid to it free and clear of expenses of the receivership under the terms of its security agreement. The chancellor denied Bank's claim as a secured claim.
Bank and the receiver stipulated with reference to the two motor scrapers as follows: "The financing statement on Bank's security interest in and to these two motor scrapers was duly and properly filed for record in the office of the chancery clerk of LeFlore County, Mississippi, on May 27, 1969, at 8 o'clock a.m., as provided by law."
Under the provisions of Mississippi Code 1942 Annotated section 41A:9-401(1) (c), the security agreement is required to be filed in the office of the Secretary of State. It was incumbent upon Bank to show that it was entitled to its security by proving that it was filed in accordance with the requirements of the statute. This it failed to do and the chancellor correctly denied the enforcement of the security agreement.
In summary, the decree of the trial court is reversed in part and affirmed in part. Travelers' total claim of $23,943.03 paid to suppliers of materials and labor on the Chiwapa project, plus attorneys' fees of $4,500 allowed in the trial court and $2,250 allowed in this Court, and $261.63 legal expenses, or a total of $30,954.66, less $21,974.21 already paid, is adjudged to be a preference claim to be paid from the proceeds of the Chiwapa project in the hands of the receiver. Travelers' claim on the Webster County project consists of $8,459.47 paid to suppliers of materials and labor, plus $750 attorneys' fees allowed by the trial court, $375 attorneys' fees allowed by this Court, and $87.21 legal expenses, or a total of $9,671.68, and the sum of $7,342.41 now held by the receiver as proceeds from the Webster County contract shall be paid to Travelers to apply on its claim, and the balance of the claim is allowed as a general, unsecured claim. The claim of Travelers on the Yalobusha project consists of $12,217.35 paid to suppliers of material and labor, plus $750 attorneys' fees allowed in the trial court, plus $375 attorneys' fees allowed for services in this Court, plus legal expenses of $87.21, or a total claim of $13,429.56. The sum of $8,191.13 held by the receiver as proceeds from the Yalobusha County project shall be paid over to Travelers to apply on its claim and the balance of Travelers' claim on the Yalobusha project is allowed as a general, unsecured claim. The decree of the trial court is affirmed as to the claim of Leflore Bank & Trust Company, except that the trial court is reversed in respect to the allowance of attorneys' fees on Bank's notes and the sum of $12,153.80 is allowed as attorneys' fees instead of $6,000.
The judgment of the trial court is therefore reversed in part as stated and otherwise affirmed, and judgment is entered here accordingly.
Reversed in part; affirmed in part, and remanded.
JONES, BRADY, INZER and ROBERTSON, JJ., concur.
NOTES
[1] This also disposes of the question of whether Travelers' claim of the Webster and Yalobusha projects was limited to retainage as hereinafter discussed.