**In re HOME BUILDERS, INC., Debtor.**

**RED SEA GROUP, LTD., Plaintiff,**

**v.**

**HOME BUILDERS, INC., Tom C. Smith, Trustee, et al., Defendants.**

**Bankruptcy No. 95–23762–A.**

**Adversary No. 96–2145–A.**

United States Bankruptcy Court, E.D. Virginia, Norfolk Division.

May 14, 1997.

**476**

Roy M. Terry, Jr., Richmond, VA, for plaintiff.

Steven L. Brown, Norfolk, VA, for defendants.

## MEMORANDUM OPINION AND ORDER

DAVID H. ADAMS, Bankruptcy Judge.

This matter is before the Court on cross Motions for Summary Judgment filed by the Plaintiff, Red Sea Group, Ltd ("surety") and the Internal Revenue Service, each agreeing that there are no material facts in dispute. The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(b)(2)(K). This is a core proceeding and the matter is properly postured to be determined in the context of a motion for summary judgment. *See Beale v. Hardy,* 769 F.2d 213 (4th Cir.1985).

### FACTS NOT IN DISPUTE

The parties agree that the following pertinent facts are not in dispute. The debtor, Home Builders, Inc. ("HBI") was a commercial contractor which contracted to construct, in addition to other motels in the South, a Rodeway Inn in Biloxi, Mississippi. HBI failed to complete the motel project prior to filing for bankruptcy protection in Norfolk, Virginia on July 24, 1995. The debtor's Chapter 7 proceeding is under the tutelage of Tom C. Smith, trustee, who was appointed at the § 341 meeting of creditors held on August 30, 1995.

At the time of the institution of this Chapter 7 case, there existed two escrow accounts relating to the Biloxi motel project, in relation to which the surety had issued a payment and a performance bond, with HBI thereon as principal. Escrow Account I contains approximately $83,000, representing amounts approved for payment by the owner of the motel, i.e. the obligee on the surety's two bonds, and Escrow Account II consists of approximately $176,000, representing amounts approved for payment and sent to the Disbursing Agent, who retained the funds subject to a 10% holdback provision in the Disbursing and Escrow Agreement. There is an additional $10,000 in Escrow Account II which relates to the initial deposit of HBI to open the account and accrued interest earned on the funds in the account.

The claims against the two accounts are as follows:

(1) The Trustee asserts a claim to all of the funds in both accounts;

(2) The IRS asserts a secured claim, a lien, of $70,000 on the funds in Escrow Account I;

(3) Those who supplied materials and labor to the biloxi project asset $195,000 in claims against Escrow Account I;

(4) The IRS asserts a claim of $70,000 against the funds in Escrow Account II; and finally

(5) The surety asserts claims against all of the funds in both escrow accounts,

"... to the extent that Red Sea pays any claims with regard to the [Biloxi] Project, and Red Sea is entitled to reimbursement from any remaining contract funds on the Project." The parties also agree that the surety has not paid the claims of any material suppliers or laborers on the Biloxi project. In fact, the surety is unable to pay any claims asserted against its payment and performance bonds issued on behalf of the debtor. In addition and not surprisingly, there is not enough money to satisfy all of the claims against it.

### CONCLUSIONS OF LAW

Bankruptcy law, federal law and Mississippi law govern the issues raised in this adversary proceeding. The entitlement to the escrowed funds and the order of priority thereto is a function of the interaction of state and federal law. We do not quarrel with the surety's position, as espoused in *Pearlman v. Reliance Insurance Company,* 371 U.S. 132, 83 S.Ct. 232, 9 L.Ed.2d 190 (1962), that the surety right to contract retainage funds is superior to any rights there-

in of the trustee for the debtor general contractor. The retainage funds never become property of the debtor's estate, and the surety is entitled to those funds **to the extent that it expends funds to pay materialmen and laborers.** In Bankruptcy Code interpretations of § 541 property, reported cases hold that the retained funds do become property of the debtor's estate, subject to the equitable interests of the materialmen, laborers and surety. As in the case *sub judice,* the trustee will have nothing to administer if the funds in escrow do not exceed the equitably superior claims of the materialmen, laborers and surety. Therefore, while the escrow accounts may be considered to be § 541 property, the funds in the accounts cannot be administered by the trustee for HBI.

■ The surety advances a legal theory that its interest in the escrowed contract funds predates and is therefore superior to the lien rights of the IRS. Although there was nothing recorded by the surety in Mississippi to protect its interest in the contract funds, it claims to have superior rights to the escrow balances to the recorded lien rights of the IRS. The theory or the surety is fraught with a major, underlying flaw: **it has not and cannot pay any funds to any of the materialmen and suppliers on the Biloxi motel project started by HBI**, and hence, it has no claim whatsoever to the escrow funds. The surety's claim arises only to the extent it makes payments under the payment and performance bonds it issued for the principal:

> We therefore hold in accord with the established legal principles stated above that the Government had a right to use the retained fund to pay laborers and materialmen: that the laborers and materialmen had a right to be paid out of the fund; that the contractor, had he completed his job and paid his laborers and materialmen, would have become entitled to the fund; and that the surety having paid the laborers and materialmen, is entitled to the benefit of all these rights to the extent necessary to reimburse it. Consequently, since the surety in this case has paid out more than the amount of the existing fund, it has a right to all of it.

*Id.* at 6. See also *Travelers Indemnity Co. v. Clark,* 254 So.2d 741 (Miss.1971).

■ The priority of the claim of the IRS to the contract balances is determined by federal statute, which overrides stated mechanics' lien laws, pursuant to Internal Revenue Code § 6323(a):

> [T]he lien imposed by section 6321 shall not be valid as against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor until notice thereof which meets the requirements of subsection (f) has been filed by the Secretary.

Only one materialman, Reddinger Construction, Inc., filed a "stop payment" notice, pursuant to Mississippi law, prior to the recordation of the IRS Notice of Federal Tax Lien. The IRS concedes that this prior recordation entitles Reddinger Construction to a priority position over the IRS, except for the fact that it failed to perfect its mechanic's lien claim under state law. As a result of such failure, the IRS asserts a superior claim to all of the funds in Escrow Account I and Escrow Account II, citing *Jitney–Jungle Stores of America, Inc. v. U.S.A.,* 1977 WL 1271, (S.D.Miss.1977), which is factually on all fours with this case:

> Thus, although the LIEN is effectuated at the time the notice is given provided suit is brought to enforce it within one year thereafter and relates back to the time notice is given, nevertheless it would not constitute notice to third party good faith purchasers unless recorded in the lis pendens record pursuant to Section 85-7-197 [of the Mississippi Code] ... Therefore, the federal tax LIEN primed or took PRIORITY over the LIEN of Sid-Harvey pursuant to 26 U.S.C.A. Section 6321, the standard by which the relative PRIORITY of federal tax LIENS and state-created LIENS is ascertained, that is, whether the state lienholder falls within the class shielded against the federal tax LIEN.

While federal statutes create a superiority of a federal tax lien over the claims of materialmen and laborers, there is an exception carved out for the mechanic's lien claimant who has perfected his claim against a judgment lien claimant under state law. If the

mechanic's lien is perfected against a subsequent judgment lienholder, the mechanic's claim will prime a later attaching federal tax lien. I.R.C. § 6323(b) and (c). Since Reddinger Construction, Inc. failed to perfect its state code mechanic's lien, it does not have priority over the federal tax lien asserted by the I.R.S.

### CONCLUSION

For the foregoing reason, the Motion for Summary Judgment filed on behalf of the surety, Red Sea Group, Ltd. is DENIED, and the Motion for Summary Judgment filed on behalf of the Internal Revenue Service is GRANTED. The interest of the surety in the escrowed funds is inferior to the tax lien of the IRS, which has a claim to those funds superior to the surety and all mechanics and materialmen in connection with the Biloxi project of the debtor.

It is so ORDERED.