Hyman Korn, J.
Petitioner, Aetna Casualty and Surety Company, moves by order to show cause to direct the Finance Administrator of the City of New York to deliver to petitioner warrants totaling $17,813. Associated Factors Corp. (hereinafter called Associated) cross-moves for an order pursuant to article 78 of the CPLB, to compel the Finance Administrator to deliver to it warrants totaling $14,033. In effect, both parties are seeking to recover moneys presently held by city and payable to a defaulting contractor, M. K. B. Industries, Inc. (hereinafter called MKB). It appears that MKB, a general contractor, entered into a series of public improvement contracts with the Board of Education of the City of New York. Separate contracts were entered into by MKB relating to P. S. 50, P. S. 616, P. S. 193, P. S. 177 and P. S, 11. Petitioner, as surety, executed and delivered to the Board of Education performance bonds and payment bonds in connection with each of the contracts entered into by MKB. Said bonds were filed with the Comptroller’s office. The contractor MKB in turn simultaneously executed separate indemnity agreements for each undertaking provided by petitioner. The indemnity agreement provided, inter alia, that in the event MKB fails to complete the undertaking or fails to pay any bills for work performed, all moneys due under the contract were assigned to petitioner.
*254 Associated alleges that on August 1, 1963 it purchased from MKB “ certain accounts receivable due ” MKB from the Board of Education and that MKB thereafter assigned to Associated all moneys due on the various contracts. Associated specifically alleges assignments made by MKB of the proceeds for work performed with respect to P. S. 193, P. S. 616, P. S. 50 and P. S. 177. However, no assignment is shown of the moneys due MKB for work performed with respect to P. S. 11.
Associated filed a financing statement on September 23, 1965 covering all the accounts receivable as per their alleged agreement with MKB dated August 1,1963. Thereafter on February 9,1966, Associated filed with the city copies of said assignments.
It is undisputed that on May 18, 1966 the Board of Education declared MKB in default on all of its contracts and thereafter notified petitioner of MKB’s default.
Petitioner, as completing surety and pursuant to demand of the Board of Education, was called upon to complete all of the public improvements originally undertaken by MKB.
Respondent’s answer denies, on knowledge or information sufficient to form .a belief, all of the essential allegations of the petition. However, respondent affirmatively requests that a determination be made with respect to the rights and priorities of the adverse claimants.
It should be noted that Internal Revenue had filed a Federal tax lien against MKB in the .amount of $28,473.89. However, a certificate of discharge was thereafter filed with the Department of Finance.
Associated’s claim to the funds held by respondent is predicated on the theory that the petitioner had a security interest which was not perfected under the Uniform Commercial Code. Associated further argues that, since it complied with the Uniform Commercial Code section 9-312 by filing a financing statement, it obtained priority to the funds held by the City of New York.
Apparently the courts in this State have not been confronted with this precise issue. However, it is nevertheless clear that proper resolution of this controversy cannot be based solely on this issue. The court must look to the underlying agreement made by MKB and the Board of Education as well as the applicable provision of the Lien L^w.
Article 57 of MKB’s contract with the Board of Education prohibits the assignment of the contract without the board’s consent. It further provides, “ No right under this contract or to any moneys to become due * * * shall exist against the City e * * by reason of any so-called assignment.
*255 Furthermore, the board had the right to revoke or annul the contract made by MKB, since it never consented to the assignments. Moreover, article 57 makes it clear that Associated does not have any right to any moneys due under the purported assignments.
A fortiori, apart from the inhibiting clause of this agreement, Associated failed to comply with the provisions of section 16 of article 2 of the Lien Law. That section provides in short that an assignment of a public improvement contract is not valid unless such assignment is filed within 20 days after the date of such assignment ‘ ‘ with the head of the department or bureau having charge of such construction 5 \
Here Associated did not file copies of the assignment made by MKB until approximately four months from the date of the last assignment. It is well established that the provisions of section 16 must be strictly complied with (see Vulcan Rail and Constr. Co. v. County of Westchester, 250 App. Div. 212, 221).
Petitioner completed all of the projects at an excess cost of over $38,000. In particular, with respect to Contract No. 700469 (P. S. 177), petitioner has expended, in addition to the above amount, the sum of $10,032.76 for supplies and materialmen.
The applicable provisions of the Lien Law were enacted to protect suppliers of labor and materials to contractors from diversion of funds which are not used to pay creditors on such jobs (Lien Law, § 72 ; Aquilino v. United States of Amer., 10 N Y 2d 271, 278-279) and to place upon the lender to the contractor the burden of showing that the advances were actually used to pay trust claims. Here Associated has made no showing that the proceeds held by respondent are to be used to pay job creditors. Under the authority of Caristo Constr. Corp. v. Diners Fin. Corp. (21 N Y 2d 507), it would appear that any attempted use by Associated of moneys held by the respondent would subject Associated to liability for any remaining unpaid subcontractors or suppliers. However, from the posture of the record it is unclear whether there are remaining and unpaid suppliers or materialmen.
Petitioner, however, stands in a different position. Certainly those materialmen and suppliers of labor paid by petitioner were truly trust fund beneficiaries under article 3-A of the Lien Law. It follows therefore that moneys earned on the projects completed were trust funds. Under such circumstances petitioner, as completing surety, became subrogated to the right of the Board of Education to use the contract balance for completion of the projects (see Scarsdale Nat. Bank & Trust Co. v. *256 United States Fid. & Guar. Co., 264 N. Y. 159). This right aróse in favor of the petitioner at the time it executed its bond. This preceded in point of time the assignments made by MKB to Associated. It should also be noted that Associated has not submitted copies of the assignments allegedly made to MKB. Moreover, it is not made clear how MKB could have entered into an agreement on August 1,1963 with Associated to sell accounts receivable due to MKB from the Board of Education when the public improvement contracts which are the subject of this proceeding were not entered into with the board until October 29, 1964.
In light of the principles set forth above, it is the court’s view that section 9-103 of the Uniform Commercial Code was never intended to require a surety who has posted payment and completion bonds to file a financing statement.
The court has not been able to find any authority in this State in which this issue has been decided. The only authority cited by Associated in support of its position, to wit, Hartford Acc. & Ind. Co. v. State Public School Bldg. Auth. (26 Pa. D. & C. 2d 717 [1961]), has been negated by Jacobs v. Northeastern Corp. (416 Pa. 417). The court stated (pp. 427-428):
‘1 Article 9 of the Uniform Commercial Code deals with secured interests. It is clear that the sureties in the case before us filed no financing statements as defined in the Code. The issue simply is: Were they required to do so? We hold that they were not.
“None of the purposes or objectives of the Code’s filing requirements would be served by holding that the subrogation to the contract balance now due is an assertion of a 1 security interest ’ and therefore subject to the filing provisions of Article 9. The contract balance withheld would never have become due and payable to Northeastern (or its receiver or creditors) as long as Northeastern defaulted on its obligation to pay labor and materialmen. Payment of the retained balance became due and available only upon performance by the sureties of Northeastern’s obligations. It is clear that all labor and material claims must be fully discharged before there is entitlement to the full contract payment. In all respects, the result so far as Northeastern and its creditors are concerned is precisely the same whether the sureties satisfy the unpaid laborers and materialmen, or whether the Commonwealth directly pays the claimants out of the retained funds. Surely, the creditors of Northeastern are not adversely affected because the sureties were called upon to, and did, perform their undertaking to pay *257 labor and material claims.” (Cf. National Shawmut Bank of Boston v. New Amsterdam Cas. Co., 411 F. 2d 848.)
Finally, the court notes that the Official Commentary to section 9-102 (McKinney’s Cons. Laws of N. Y., Uniform Commercial Code, p. 325) states that “ the purpose of this Section is to bring all consensual security interests in personal property and fixtures * * * under this Article.” The comment adds that the principal test whether a transaction comes within this article is: Is the transaction intended to have the effect as security? The transactions in this case between the surety and the contractor MKB were not intended to have that effect.
Accordingly, petitioner’s motion is granted and the cross motion by Associated is denied.