HOME INDEMNITY COMPANY

v.

The UNITED STATES,

v.

Gerald P. GRACE, Trustee in Bankruptcy
of Abco Finance Company,
Third-Party.

No. 7-70.

United States Court of Claims.

Nov. 13, 1970.

Edward Gallagher, Washington, D. C.,
attorney of record, for plaintiff.

Mary J. Turner, Washington, D. C.,
with whom was Asst. Atty. Gen. William
D. Ruckelshaus, for defendant.

Alex H. Dolnick, Chicago, Ill., for Gerald P. Grace, trustee in bankruptcy of the
estate of Abco Finance Co.

Before COWEN, Chief Judge, and
LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON, and NICHOLS, Judges.

ON PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT

PER CURIAM:

This is a dispute between a surety
(Home Indemnity Company) and a
financing institution (Abco Finance
Company) over funds in the hands of the
Government which are admittedly due
and payable under a completed government contract. The defendant acknowledges that it is a mere stake holder and
takes no position as to which claimant
is entitled to the money.

The contractor (Thomas J. Flisk, doing business as Flisk Plumbing and Heating Company) agreed in October 1963
with the Government to do certain alteration and replacement work in the main
post office in Chicago. Plaintiff Home
Indemnity became the surety under this
contract, furnishing both the performance and the payment bonds, and receiving from Flisk an assignment of all
rights to the contract's proceeds (in the
event of breach or default). On April
28, 1965, the Government terminated the
contract for default. Home Indemnity
finished the work and was reimbursed by
the defendant for that expense. Home
Indemnity also paid a number of unpaid
laborers and materialmen on the contract, in an amount of over $17,700. On
the completion of the work, after deduction of liquidated damages and certain
other sums, the United States had in its
possession almost $8,900, which is concededly owing under the contract.

During his performance of the work, Flisk borrowed sums of money from Abco Finance Company under a security agreement assigning to the finance company all funds (among others) due under the government contract. Apparently, at the time the bulk of this loan was made, Flisk was in Chapter 11 reorganization proceedings in the Northern District of Illinois, and that court authorized him to borrow the money. The total sum unpaid by Flisk to Abco appears to be over $20,000.

After these loans, Abco itself went into bankruptcy, and its trustee in bankruptcy was served by plaintiff with third-party process. The trustee responded by appearing here, denying that plaintiff is entitled to the contract money the Government now has, and claiming those proceeds for Abco's bankruptcy estate. Flisk, the contractor, was also served with third-party process, but has not appeared, probably because he was discharged, some two years ago, as a voluntary bankrupt without assets.

The plaintiff-surety has moved for summary judgment that it has the right to the full amount now held by the United States under the contract. The third-party bankruptcy trustee, representing the finance company, opposes that demand (but has not himself moved for judgment). The motion turns wholly on a legal issue involving the Uniform Commercial Code since the trustee concedes that, were it not for that Code, the surety would be entitled, under settled law, to the sum now in dispute. The propositions advanced by the trustee are, first, that Article 9 ("Secured Transactions; Sales of Accounts, Contract Rights and Chattel Paper") of the Uniform Commercial Code, which has been adopted in Illinois, now governs the surety's rights, whatever may have been the prior rule;

and, second, that the surety cannot prevail in this instance because it failed to comply with the recording provisions of that Article, while the finance company's documents were properly recorded. The trustee distingishes the well-known case law supporting the surety's right to recover (including Pearlman v. Reliance Insurance Co., 371 U.S. 132, 83 S.Ct. 232, 9 L.Ed.2d 190 (1962)) as antedating the adoption of the U.C.C. which is said to have worked a marked change in the surety's position and rights.

This precise issue was presented to, and decided by, the Court of Appeals for the First Circuit in National Shawmut Bank v. New Amsterdam Casualty Co., 411 F.2d 843 (1969). That decision held that the surety's right of subrogation was not displaced or controlled by Article 9 of the U.C.C. See, also, Framingham Trust Co. v. Gould-National Batteries, Inc., 427 F.2d 856 (C.A. 1, 1970). We agree that the U.C.C. was not intended to, and did not, alter the pre-existing law as to a surety's rights of subrogation. It would add to the length but not the enlightenment of the law-reports for us to ring the changes on the First Circuit's extended discussion. Suffice it that we too believe that "equitable subrogation is too hardy a plant to be uprooted by a Code which speaks around but not to the issue" (411 F.2d at 849). National Shawmut Bank and Framingham Trust Company both concerned Article 9 of the U.C.C. as it was adopted in Massachusetts, but the third-party trustee has not cited any materials or given any reason for thinking that Illinois' adoption of the Article would or should be construed differently.[1]

The plaintiff-surety is therefore entitled to the contract funds now retained. Its motion for summary judgment is granted. The exact amount of recovery will be determined under Rule 131(c).

---

1. The *National Shawmut Bank* opinion deals with the lower-court Pennsylvania cases holding Article 9 applicable. 411 F. 2d at 847 n. 6.