**In re D.C.I. DANACO CONTRACTORS, INC., Debtor.**

**D.C.I. DANACO CONTRACTORS, INC., Plaintiff,**

v.

**EUROPEAN AMERICAN BANK, Defendant.**

**Bankruptcy No. 889–91072–478. Adv. No. 890–81094–478.**

United States Bankruptcy Court E.D. New York.

June 8, 1992.

Finkel, Goldstein, Berzow & Rosenbloom, New York City, for debtor/plaintiff.

Dollinger, Gonski, Rossman, Permut & Hirschorn, Carle Place, N.Y., for defendant.

DOROTHY EISENBERG, Bankruptcy Judge.

## BACKGROUND

Plaintiff, D.C.I. Danaco Contractors, Inc. ("DCI" or "Debtor") has instituted this adversary proceeding seeking summary judgment pursuant to Bankruptcy Rule 7056 declaring that defendant European Ameri-can Bank ("EAB" or "Defendant") does not have a security interest in DCI's accounts receivables, which arise from public improvements. The Court having carefully considered the facts and circumstances of the transactions grants DCI's motion to set aside any claimed lien by EAB on Debtor's accounts receivable due from public improvement contracts.

DCI is a mechanical contractor whose work is primarily confined to public improvements. On or about August 17, 1984, DCI entered into a general security agreement with EAB whereby EAB loaned DCI approximately $445,000 between 1984 and 1985. In consideration of the loans, DCI permitted EAB to acquire a security interest in all of DCI's existing and after-acquired inventory, accounts, contract rights and general intangibles. The security agreement had provided for what is colloquially called a "dragnet clause" encumbering all collateral arising in the future, as well as the collateral existing at the time of the loan. EAB perfected its security interest, by filing a UCC–1 financing statement with the City Register of New York, Kings County on August 21, 1984 and with the Department of State of New York on August 22, 1984.

Neither party refutes that these monies were loaned on a secured basis. In fact, each of the notes evidencing the funds borrowed, are clearly marked "secured note" on their face. Moreover, both parties agree that DCI repaid in full the $445,000 prior to 1986. However, the UCC–1 financing statements were never removed from the public record by the filing of a termination statement.

On or about October 21, 1986, the parties entered into a letter agreement whereby EAB agreed to extend an unsecured line of credit to DCI in the amount of $700,000. The letter agreement provided that the line of credit would be available until May 31, 1987, subject only to DCI's maintenance of a satisfactory financial condition as determined by EAB in its discretion. Thereafter, on or about July 2, 1987, the parties executed a second letter agreement pursuant to which EAB would again provide an

unsecured line of credit in the amount of $700,000, available until May 31, 1988. The latter unsecured line of credit was also subject only to DCI's maintenance of a satisfactory financial condition as determined by EAB in its discretion. (The October 1986 and July 1987 revolving lines of credit will jointly be referred to herein as "$700,000 line of credit").

The present dispute has as its basis three separate borrowings made by DCI pursuant to the $700,000 line of credit. On or about May 27, 1986, DCI borrowed $160,000 from EAB. Thereafter, on or about December 31, 1986, and on or about June 15, 1987, DCI borrowed $120,000 and $80,000 respectively from EAB for a total of $360,000. There remains unpaid to EAB approximately $400,000. *Each of the notes evidencing the aforementioned loans are clearly marked "unsecured note" on their face.* (Emphasis added). Thereafter, the three unsecured loans were consolidated into one note dated January 11, 1988.[1] The parties do not dispute that the $360,000 evidenced by the January 11, 1988 note has not been paid by DCI.

It is undisputed that EAB did not comply with section 16 of the New York State Lien Law at any time prior to ninety (90) days of the filing of the petition in bankruptcy. The only issue in contention is whether this outstanding amount borrowed by DCI under the $700,000 line of credit, was in fact unsecured, or whether said loan was subject to the initial August 17, 1984 security agreement and UCC–1 statements and therefore collateralized all of the Debtor's accounts receivable.

EAB claims that the $700,000 line of credit is subject to the 1984 security agreement and therefore EAB has a perfected security interest in DCI's accounts receivable, including any that arise from public improvement contracts. EAB argues that the 1984 financing statements were effective when the Debtor's petitions were filed in June, 1989 and would have been renewed in August, 1989, but for the Debtor's filing

of its petition in bankruptcy. EAB claims the parties intended that the $700,000 line of credit relate back to the 1984 security agreement.

DCI, on the other hand, contends that the 1986 and 1987 loans were expressly issued pursuant to an unsecured $700,000 line of credit extended by EAB at its discretion, and thus any funds remaining due to EAB pursuant to these loans are not secured. In support of its position, DCI has submitted as evidence fourteen (14) separate internal bank memoranda from August 1, 1986 through April 25, 1989 acknowledging that the loans in question were unsecured revolving lines of credit. These memoranda include the notes themselves, credit approval requests, letters to DCI approving unsecured lines of credit, letters to non-parties characterizing the credit lines as unsecured and the bank's own reviewing statements detailing its history of dealings with DCI which described the credit lines as unsecured.

DCI further asserts that even if the 1984 security agreement is valid and made applicable to the subsequent loans, EAB failed to perfect its security interest in DCI's public improvement accounts receivable pursuant to section 9–302(1)(j) of New York's Uniform Commercial Code ("UCC").

In summary, Debtor's motion for summary judgment asserts that EAB's claimed security interest in its accounts receivables is not enforceable for the following reasons:

(1) The parties clearly intended that the $700,000 line of credit was a separate contract from the 1984 security agreement and would be unsecured;

(2) Even if the $700,000 line of credit was deemed secured by the 1984 security agreement, its account receivables arise from public improvement projects, and EAB has failed to perfect its security interest in the accounts receivable as required

---

1. Although the consolidated note does not contain the words "unsecured note" printed expressly on its face, (as do the three notes it encompasses), the form of the note is *identical* to that of each of the three unsecured notes, in contrast to the notes executed under the prior security agreement which are marked "secured note".

by UCC section 9–302(1)(j), and section 16 of the New York Lien Law; and

(3) If EAB ever subsequently perfected its security interest, such perfection was done within ninety (90) days of the filing of the petition and is thereby voidable as a preference.

Bankruptcy Rule 7056 provides for the application of Rule 56 of the Federal Rules of Civil Procedures in adversary proceedings. Rule 56(c) provides in pertinent part:

> summary judgment shall be rendered … if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(c). As the Supreme Court in *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) observed:

> One of the principal purposes of the summary judgment rule is to isolate and dispose of factually insupportable claims … summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole which are designed to secure the just, expedient and inexpensive determination of every action.

477 U.S. at 323–324, 327, 106 S.Ct. at 2552–2553, 2554. In order to defeat a motion for summary judgment, a defendant must raise genuine issues of material fact in dispute. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The court may grant summary judgment where there is no such issue and the movant is entitled to judgment as a matter of substantive law. *Hamilton v. Smith,* 773 F.2d 461 (2nd Cir. 1985). Thus, it is not the court's function to try issues of fact, rather to determine whether there are issues to be tried. *Schering Corp. v. Home Insurance Company,* 712 F.2d 4, 9 (2nd Cir.1983), *quoting, Heyman v. Commerest & Industry Insurance Company,* 524 F.2d 1317, 1320 (2nd Cir.1975).

In the instant case, sufficient documentary evidence was submitted to enable the Court to determine that there are no genuine issues as to any material facts, and summary judgment is appropriate. The only issue confronting the Court is whether EAB has a validly perfected security interest in DCI's accounts receivable for public improvement projects. This issue is an issue of law, not fact.

## DISCUSSION

The first clause of the security agreement executed in 1984 provides:

1. In consideration of *one or more loans, advances or other financial accommodations at any time before, at or after date made or extended by Secured Party to Debtor,* directly or indirectly, as principal, guarantor or otherwise, *at the sole discretion of Secured Party in each instance,* Debtor hereby grants to Secured Party a security interest in, a continuing lien upon and a right of set-off against, and *Debtor hereby assigns to Secured Party, the collateral described in Paragraph 2, to secure the payment, performance and observance of all indebtedness, obligations, liabilities and agreements of any kind of Debtor to Secured Party, now existing or hereafter arising,* direct or indirect … acquired outright, conditionally, or as collateral security from another, absolute or contingent, joint or several, secured or unsecured, due or not, contractual or tortious, liquidated or unliquidated, arising by operation of law or otherwise, and all loan agreements, documents and instruments evidencing any of the foregoing obligations or under which any of the foregoing obligations may be issued, created, assumed or guaranteed. (Emphasis added).

This clause of the security agreement is commonly referred to as a "dragnet clause" because it attempts to secure for the creditor a continuation of a security interest in the same collateral pledged by the Debtor for any and all future advances. Dragnet clauses are broad reaching and

have been upheld in New York as valid. *In re Riss Tanning Corp.*, 468 F.2d 1211 (2nd Cir.1972).

In order for a security agreement which provides for a dragnet clause to be terminated, the UCC places an affirmative obligation on the debtor to demand a termination statement. Otherwise, the financing statement will be valid for the full five (5) year period.

Paragraph 2 of the security agreement described the collateral as:

> All existing and hereafter acquired or created inventory wherever located, *accounts, contract rights* and general intangibles arising in connection with the sale of inventory and/or the rendition of services, together with the debtor's interest in all inventory described in invoices and all returned and repossessed inventory.

It should be noted that the security agreement granted EAB a continuing lien for future advances "at the sole discretion of the secured party in each instance."

It appears from the letters and documentation provided from EAB's own files and the notes themselves, that there is a sufficient basis to find that EAB utilizing its sole discretion, granted the Debtor the loans in question on an unsecured basis.

In its letters to Debtor dated October 21, 1986 and July 22, 1987, EAB acknowledged the approval of the $700,000 line of credit by stating *inter alia:*

> European American Bank ("EAB") is pleased to advise you that it has approved an *unsecured line of credit* for DCI Danaco Contractors, Inc. of $700,000 for borrowing up to ninety (90) days. (Emphasis added).

No reference is made in either of these letters to the 1984 security agreement. Nor is reference made to any collateral which would secure the borrowing. Each letter clearly and unequivocally characterizes the line of credit as being "unsecured." Any reference to any security is made only to the personal guarantees of David Nemick and Dennis Nemick who are both officers, shareholders and directors of DCI, to secure the indebtedness. Each letter concludes by stating:

> If this letter is in accordance with your understanding of our discussions, please execute and return the enclosed copy of this letter to me.

When it became clear to EAB that Debtor was experiencing financial difficulties prior to the filing of bankruptcy, EAB's internal memoranda revealed that it was particularly concerned about its "outstanding unsecured loan of $400,000 to DCI Danaco Contractors". EAB's own memoranda further revealed its subsequent efforts to obtain collateral for the $700,000 line of credit from Debtor's surety. Thus, the written letter agreements and EAB's own memoranda reveal that neither EAB nor Debtor intended the $700,000 line of credit to be secured by anything other than the personal guarantees of the Nemicks. Both letters are executed by each party, thus confirming the parties' understanding that the $700,000 line of credit was a new and separate agreement, and unlike the 1984 loans, was at the bank's discretion, unsecured. EAB has failed to prove that it advanced the $700,000 line of credit to Debtor subject to the 1984 security agreement, and the Court will not allow parol evidence to alter the unambiguous language of the notes and the letter agreements.

Even if Debtor's failure to demand a termination statement after the 1984 loans were repaid, rendered the subsequent loans secured by EAB's interest in the 1984 security agreement, the particular accounts receivables at issue are not properly perfected. In order to perfect its lien in DCI's accounts receivable, EAB was required to file appropriate documents in the proper offices as mandated by New York law. Unless EAB complied with the UCC requirements, it could not possess a lien against Debtor's accounts which a trustee in bankruptcy or a debtor in possession could not avoid, pursuant to the Bankruptcy Code's "strong arm" provision in section 544(a)(1). EAB's perfected lien is as to "accounts" as defined in UCC section 9–106 as "any right to payment for goods sold or

leased or for services rendered which is not evidenced by an interest or chattel paper, whether or not it has been earned by performance." The official comment to UCC section 9–106 states that an "account is the ordinary commercial accounts receivable." EAB had properly perfected its liens against DCI's accounts receivable by filing UCC financing statements with the Secretary of State's office and the County Clerk's office. However, at issue are Debtor's accounts receivable *derived from public improvements*. New York's UCC § 9–302(1)(j) provides special rules for the perfection of assignments of accounts receivable for public improvements. Accordingly, any accounts receivable generated by public improvement projects must be perfected pursuant to UCC § 9–302(1)(j).

UCC section 9–302(1)(j) requires filing in the Department of State to protect a security interest in:

> (j) *accounts or rights under a contract* for the performance of labor or the furnishing of materials for the improvement of real property or *for a public improvement as to which a filing is required and is hereafter made in accordance with* section fifteen or *section sixteen of the lien law* ... (Emphasis added).

Section 16 of the Lien Law is applicable in this case. Section 16 (Assignment of contracts and orders for public improvements to be filed) provides, *inter alia*, that an assignment of a public improvement contract or of the money, due, or to become due thereof, is not valid unless such assignment is filed within twenty (20) days after the date of execution of such assignment. The filing must be made with the department head in charge of such construction.

New York case law has construed Lien Law section 16 strictly and failure to comply has resulted in a purported secured party to be found unsecured. *Aetna Cas. & Sur. Co. v. Perrotta*, 62 Misc.2d 252, 308 N.Y.S.2d 613 (1970); *Vulcan Rail and Construction Company v. Westchester County*, 250 App.Div. 212, 293 N.Y.S. 945 (A.D.2d Dept. 1937). EAB has admitted that it did not file the requisite papers

pursuant to section 16 of the Lien Law. (*See*, Defendant's answers to request for admissions, ¶ 3). Accordingly, EAB never obtained a validly perfected security interest in DCI's public works' accounts receivable.

Most of the cases cited by EAB to support its argument that the Debtor may not claim the right to attack the perfection of its lien pre-date New York's adoption of Article 9 of the Uniform Commercial Code in 1962, and section 544(a) of the present Bankruptcy Code.

Under both the Uniform Commercial Code and the Bankruptcy Code, unperfected security interests are subordinate to the rights of lien creditors, real or hypothetical. Under UCC section 9–301(1)(b), an unperfected security interest is subordinate to the rights of "a person who becomes a lien creditor before the security interest is perfected." A lien creditor "is entitled to priority over a creditor whose security interest has not been perfected, regardless of whether the lienholder has knowledge of the unperfected security interest." *Avant Petroleum, Inc. v. Banque Paribas*, 853 F.2d 140, 142 (2d Cir.1988).

Under Section 9–301(3),

> a 'lien creditor' means a creditor who has acquired a lien on the property involved by attachment, levy or the like and includes an assignee for benefit of creditors from the time of assignment and a trustee in bankruptcy from the date of the filing of the petition or a receiver in equity from the time of appointment.

Therefore, an unperfected security interest is subordinate to the rights of a trustee in bankruptcy.

Pursuant to 11 U.S.C. § 1107(a), a debtor-in-possession has all of the rights, powers and duties of a trustee in bankruptcy. *In re Woodfield Furniture Clearance Center of Suffolk*, 102 B.R. 327, 331 (Bankr.E.D.N.Y.1989), *citing In re Vintero Corp.*, 735 F.2d 740 (2d Cir.1984), *cert. denied*, 469 U.S. 1087, 105 S.Ct. 592, 83 L.Ed.2d 702 (1984).

Under UCC section 9–301(b) and section 544(a)(1) of the Bankruptcy Code, a trustee

in bankruptcy or in this case, the debtor in possession, holds the same rights as a hypothetical lien creditor and can set aside a security interest which is not perfected as of the date of filing the petition for relief.

### CONCLUSION

Even if this Court found that the $700,-000 line of credit was secured by the collateral specified in the 1984 security agreement pursuant to the dragnet clause, the lien must still be set aside as against any accounts due from public works because EAB never properly perfected as to DCI's public improvement accounts receivable in accordance with Lien Law section 16. Therefore, Debtor's motion for summary judgment is granted and EAB's claim for $400,000 is deemed an unsecured claim.

Settle an Order in favor of Debtor, in accordance with this decision.