I Judge DENNIS R. BAGNERIS, SR.
Plaintiff-appellant, Louis Bailey (“Reverend Bailey”) appeals from a summary judgment dismissing defendant-appellee, Scottsdale Insurance Company (“Scottsdale”), from Reverend Bailey’s suit for damages. We affirm.

FACTS AND PROCEDURAL HISTORY

On March 2, 1999, Reverend Bailey, individually and on behalf of his church, New Genesis Baptist Church filed a Petition for Damages against Battiest Construction Company and Joseph Battiest, Jr. (hereinafter collectively, “Mr. Battiest”), alleging that Mr. Battiest failed to perform construction and/or renovation work for which they had already been paid.
On May 26, 1999, Reverend Bailey amended his Petition and named Canal Indemnity Company, the alleged insurer for Battiest Construction Company, and Scottsdale Insurance Company, the insurer for New Genesis Baptist Church. Reverend Bailey alleged that Scottsdale was “responsible for the insured’s damage to their property due to the collapse of the structure.” Reverend Bailey maintained that the collapse was the direct and proximate result of the intentional conduct of defendant Battiest Construction Company and- of the substantial winds occurring in [2the 'area at the time that the building collapsed. Therefore, according to Reverend Bailey, the losses were covered under the vandalism and windstorm provisions of the policy entered into between Reverend Bailey and Scottsdale.
In response, Scottsdale denied coverage for such a loss and moved for summary judgment, seeking a dismissal, with prejudice, because the subject policy did not cover loss occasioned by contractor fault.
On February 4, 2000, the trial court, without reasons, entered summary judgment against Reverend Bailey and in favor of Scottsdale, thereby dismissing, with prejudice, Scottsdale from Reverend Bailey’s suit. It is from this judgment that Reverend Bailey now appeals.

LAW AND DISCUSSION Standard of Review

This Court discussed the appellate standard of review of motions for summary judgment in Spicer v. Louisiana Power & Light Co., 97-2406 (La.App. 4 Cir. 4/8/98), 712 So.2d 226 and stated as follows:
“Summary judgments are now favored, and the rules regarding such judgments should be liberally applied. Oakley v. Thebault, 96-0937 (La.App. 4 Cir. 11/13/96), 684 So.2d 488, 490. Appellate courts review the motion for summary judgment de novo. A motion for summary judgment which shows that there is no genuine issue of material fact and that the mover is entitled to judgment
*1120 as a matter of law shall be granted. La.Code Civ. Proc. art. 966 C(l). An issue is genuine if reasonable persons could disagree. Smith v. Our Lady of the Lake Hospital, 93-2512 (La.7/5/94), 639 So.2d 730, 751. If, on the state of the evidence, reasonable persons could reach only one conclusion, there is no need for a trial on that issue. Id.
Paragraph C(2) of Article 966, added by Acts 1997, No. 483, sets forth the burden of proof in a motion for summary judgment:
|sThe burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.”

Insurance Contracts

An insurance policy is an agreement between the parties and should be interpreted by using the general rules of contract interpretation as set forth in the Louisiana Civil Code. Ledbetter v. Concord Gen. Corp., 95-0809 (La.1/6/96); 665 So.2d 1166; Smith v. Matthews, 611 So.2d 1377 (La.1993); Crabtree v. State Farm Ins. Co., 93-0509 (La.2/28/94), 632 So.2d 736. The judicial responsibility in interpreting insurance contracts is to determine the parties’ common intent. Louisiana Ins. Guar. v. Interstate Fire, 93-0911 (La.1/14/94), 630 So.2d 759. The parties’ intent, as reflected by the words of the policy, determines the extent of coverage. La. C.C. art.2045; Ledbetter, supra; Reynolds v. Select Properties, Ltd., 93-1480 (La.4/11/94); 634 So.2d 1180. However, when the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent. La. C.C. art.2046. Such intent is to be determined in accordance with the general, ordinary, plain and popular meaning of the words used in the policy, unless the words have acquired a technical meaning. La. C.C. art.2047; Ledbetter, supra, citing Louisiana Ins. Guar. v. Interstate Fire, supra; Reynolds v. Select Properties, Ltd., supra. Courts lack the authority to change or alter the terms of an insurance policy under the guise of interpretation. Louisiana Ins. Guar. v. Interstate Fire, supra.
An insurance policy should not be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. Reynolds v. Select Properties, Ltd., supra. Absent a conflict with statutory provisions or public policy, insurers, like other individuals, are entitled to limit their liability and to impose and to enforce reasonable conditions upon the policy obligations they contractually assume. As the Louisiana Supreme Court has stated in Muse v. Metropolitan Life Ins. Co., 193 La. 605, 192 So. 72 (1939), Commercial Union Ins. Co. v. Advance Coating Co., 351 So.2d 1183, 1185 (La.1977) and Reynolds v. Select Properties, Ltd., 634 So.2d at 1183:
The rule of strict construction does not authorize a perversion of the language, or the exercise of inventive powers for the purpose of creating an ambiguity where none exists, nor does it authorize *1121 the court to make a new contract for the parties or disregard the evidence as expressed, or to refine away terms of a contract expressed with sufficient clearness to convey the plain meaning of the parties ...

Discussion

In one assignment of error, Reverend Bailey argues that he has shown that there exists genuine issues as to material facts, and therefore, Scottsdale was not entitled to judgment as a matter of law. Specifically, Reverend Bailey argues that Scottsdale’s policy provides that it will pay for losses to the covered property resulting from “vandalism” and “windstorm or hail”. Reverend Bailey further | «argues that there are genuine issues of material fact regarding whether Battiest’s actions amounted to “vandalism” under the Scottsdale policy and whether the destruction of the covered property was due to “windstorm” under the policy. Because these genuine issues of material fact exist, according to Reverend Bailey, trial on the merits is required. In support of his contentions, Reverend Bailey offers a copy of the Scottsdale policy and a copy of the deposition testimony of Mr. Glenn Snyder, a civil engineer.
In response, Scottsdale argues that summary judgment in its favor was mandated because Scottsdale pointed to an absence of factual support for the essential element of Reverend Bailey’s claims that there was coverage under the Scottsdale policy. According to Scottsdale, Reverend Bailey does not dispute that the damage to the church resulted in connection with work being performed by a contractor he (or the church) hired. Scottsdale points out that Reverend Bailey does not allege that the contractor snuck onto the premises to vandalize the church. Scottsdale further points out that Reverend Bailey failed to present support for the claim that there was a windstorm or alternatively, that wind contributed to the collapse of the church. According to Scottsdale, a lawsuit should not proceed based on mere allegations; therefore, summary judgment was appropriate. Using the earlier-stated laws regarding summary judgment and insurance contracts, for the following reasons, we agree with Scottsdale’s arguments and affirm the judgment of the trial court.
The Scottsdale policy issued to New Genesis Baptist Church provides, in pertinent part:
SECTION I — COVERAGES
I «COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY
INSURING AGREEMENT
a. We will pay those sums that the insured becomes legally obligated to pay as damages because of “bodily injury” or “property damage” to which this insurance applies. We will have the right and duty to defend the insured against any “suit” seeking those damages. However, we will have no duty to defend the insured against any “suit” seeking damages for “bodily injury” or “property damage” to which this insurance does not apply. We may, at our discretion, investigate any “occurrence” and settle any claim or “suit” that may result....
(Emphasis Supplied).
Scottsdale argues that the alleged loss in this case was not covered by the commercial general liability portion of the policy because it was not a loss that the insured church became “legally obligated to pay” as required for liability coverage. We agree with this argument. Looking at this unambiguous policy language, as well as the fact that the Scottsdale policy applied to Reverend Bailey and New Genesis Baptist Church, as opposed to Battiest Con *1122 struction, this Court finds that it is reasonable to conclude that this particular policy-language means that the Scottsdale policy does not apply to the damages complained of in this case. It is Battiest Construction, and not Reverend Bailey and/or New Genesis Baptist Church, who is accused, because of the damages sustained in this case, of owing liability. Scottsdale points out, and we note that we agree with this point, that Mr. Battiest is not an insured under the Scottsdale policy; because of this, Mr. Battiest’s liability is not covered under this policy.
Reverend Bailey goes further and points to other language in the policy that could also possibly support his argument that Scottsdale, by virtue of the policy ^language, is liable for the damages sustained in this case. He specifically points to language in the policy regarding particular types of “covered” losses that will be honored by Scottsdale. In response, Scottsdale acknowledges this particular policy language, as well as other policy language that applies. The policy language referred to by both Reverend Bailey and Scottsdale provides as follows:
C. COVERAGE
We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.
1. Covered Property
Covered Property as used in this Coverage Part, means the type of property described in this section A.1 and limited in A.2. Property Not Covered, if a Limit of Insurance is shown in the Declaration for that type of property.
a. Building meaning the building or structure described in the Declaration, included:
(1) Completed additions;
[[Image here]]
(5) If not covered by other insurance:
(a) Additions under construction, alterations and repairs to the building or structure;
[[Image here]]
Using this language, Scottsdale argues that under this language, in order for coverage to lie, there must be a loss 1) To covered property AND 2) Resulting from a covered loss. We agree.
There is no dispute that damage occurred to the property covered under the insurance contract between Scottsdale and Reverend Bailey. What is more problematic however is the determination of whether the type of loss that occurred | ¿fell into one of the eleven specific enumerated “covered losses” listed in the policy. The policy language applicable to “covered losses” provided, in pertinent part, as follows:
A. COVERED CAUSES OF LOSS
1. Fire
2. Lightning
3. Explosion
4. Windstorm or Hail
5. Smoke
6. Aircraft or Vehicles
7. Riot or Civil Commotion
8. Vandalism
9. Sprinkler Leakage
10. Sinkhole Collapse
11. Volcanic Action
Reverend Bailey attempts to argue that Battiest’s Construction’s removal of the church’s ceiling joists could be equated with “vandalism” and, because of this, is therefore covered by the Scottsdale policy. We disagree. As stated earlier, an | qinsurance policy should not be interpreted in an unreasonable or strained manner *1123 so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. Reynolds v. Select Properties, Ltd., supra. With regard to the “vandalism” issue, we find that interpreting the particular facts of this case in such a way as to state that Battiest’s actions constituted “vandalism” would indeed be absurd and unreasonable. We are not persuaded by this argument’s attempt to find liability with regard to the “vandalism” issue. There is no merit to this argument.
In addition to the vandalism argument, Reverend Bailey further argues that Scottsdale is liable because “reasonable persons could conclude” that “the wind occurring in the area of the premises, given the condition of the building as left by Battiest, constitutes a windstorm under the policy.” In response, Scottsdale argues that Reverend Bailey has failed to produce anything indicating that there was a “windstorm” at the time of loss. Scottsdale further argues that Reverend Bailey’s attachment of a weather report from Com-pu Weather Experts, indicating that there was wind around the time of loss still fails to show that there was a “windstorm”. After careful review of this report, we find that it fails to specifically show that a windstorm took place in the location of New Genesis Baptist Church on the exact day that the church collapsed. Therefore, we find that, on this point, Reverend Bailey failed to meet his burden of proof as an opponent to the motion for summary judgment filed by Scottsdale. There is no merit to this argument.

{^CONCLUSION

For the foregoing reasons, we find that the plaintiff-appellant’s assignment of error in this matter is without merit. For these same reasons, we AFFIRM the judgment of the trial court.
AFFIRMED.