841 So.2d 1 (2003)
Tyson B. SHOFSTAHL and Ivar Koek
v.
The BOARD OF COMMISSIONERS OF THE ORLEANS LEVEE DISTRICT, The Board of Supervisors of the Louisiana State University Agricultural and Mechanical College, Acting for the University of New Orleans, and the University of New Orleans.
No. 2002-CA-0018.
Court of Appeal of Louisiana, Fourth Circuit.
January 15, 2003.
Rehearing Denied April 15, 2003.
Writ Denied September 26, 2003.
Thomas G. O'Brien, Roland M. Vandenweghe, Jr., Robert N. Markle, Adams & Reese LLP, New Orleans, LA, for Plaintiff/Appellant.
Richard P. Ieyoub, Attorney General, Gustave A. Manthey, Jr., Assistant Attorney General, New Orleans, LA, for Defendant/Appellee (Louisiana State University, Acting for the University of New Orleans).
Todd L. Lacoste, John J. Erny, III, Law Offices of John J. Erny, III, Metairie, LA, *2 for Defendant/Appellee (The Board of Commissioners of the Orleans Levee District).
Scott G. Jones, Hulse & Wanek, New Orleans, LA, for Third Party Appellee (Roger Perret And The Continental Insurance Company).
(Court composed of Judge JOAN BERNARD ARMSTRONG, Judge MICHAEL E. KIRBY, Judge MAX N. TOBIAS, JR.).
MICHAEL E. KIRBY, Judge.
Plaintiffs ran their boat into an unlit pier at night. The trial court granted summary judgment in favor of the defendants. The plaintiffs appeal this judgment. We find that the defendants by maintaining the pier in the condition they did were a cause in fact of the accident. Nevertheless, the plaintiffs were the sole proximate and superseding cause of their maritime accident. Therefore, summary judgment was properly granted by the trial court because proximate causation cuts off liability for a cause in fact under general maritime law.
STATEMENT OF THE FACTS
On the evening of May 29, 1994, the plaintiffs, Tyson Shofstahl and Ivar Koek, were looking forward to a night of socializing at Bart's, a bar and restaurant in the New Basin Canal in New Orleans. Instead of waiting for a more plentiful crowd to arrive, they decided to while away the time by operating the pleasurecraft they were using on Lake Pontchartrain at night.
On this trip, they struck a stationary pier that protruded four hundred twenty (420) feet into Lake Pontchartrain. On the night of the allision the pier was not lit, even though there was wiring on the pier for spotlights. The boat had a flashlight aboard, and it was used to navigate out of the Bonnabel launch area, where plaintiffs launched their boat, but the flashlight was not being used at the time of the accident. Immediately prior to the allision, Mr. Koek, an inexperienced boat operator, had the boat at full throttle and was planing at about 25 miles per hour. They were heading due east in a dark area along the south shore of Lake Pontchartrain, around Pontchartrain Beach. The area was dark because, since the demise of Pontchartrain Beach, the shore along this part of Pontchartrain Beach had ceased to be lighted.
The Orleans Levee Board, the owner of the pier, had obtained a permit in 1956 from the U.S. Army Corps of Engineers. That permit stated that if the U.S. Coast Guard prescribed lighting, it would be required. At the time of the allision, the Board of Supervisors of Louisiana State University, via the University of New Orleans, was the lessee of the pier.
Nowhere in the record is there evidence that the U.S. Coast Guard prescribed a navigation light on the boat pier.
The location of the boat pier is depicted on the navigation chart published by the United States Department of Commerce, but the corporate representative of the Levee Board could not locate it easily. Nevertheless, the plaintiffs were not using this chart to navigate the lake.
Prior to the accident, Mr. Shofstahl admitted to seeing the shape and outline of something in the dark at a distance ahead. While he was analyzing what the form could be, he did not alert Mr. Koek, who was operating the boat. As Mr. Koek finally saw the pier directly ahead of his course, he steered hard to port without having time to reduce engine speed. The boat struck the pier, resulting in total hull loss. The plaintiffs went to the emergency room. They suffered lacerations of the *3 skin, some that required numerous stitches, and bruises.
ACTION OF THE TRIAL COURT
Plaintiffs filed this suit on May 26, 1995, seeking damages for injuries sustained. Plaintiffs named as defendants in their Original Petition for Damages the Board of Commissioners of the Orleans Levee District, the owner of the wharf, and the Board of Supervisors of the Louisiana State University Agricultural and Mechanical College, acting for the University of New Orleans, the lessee of the wharf. Plaintiffs asserted in their Petition that the defendants were negligent and strictly liable to them, under state and federal law, for failing to maintain adequate lighting and for creating a hazard that presented an unreasonable risk of harm to vessel operators at night.
Plaintiffs' depositions occurred in June 1999, following which the owner of the subject vessel and his liability insurer were brought into the litigation by third party demand.
In 2000, the vessel liability insurer's attempt to obtain summary judgment was denied by the trial court, ostensibly on the strength and wording of La. R.S. 34:851.18.[1]
As the matter was being set for trial in 2001, the lessee and owner of the pier both moved for summary judgment. Plaintiffs conducted a 1442 deposition of the Orleans Levee Board and filed an opposition memorandum. Plaintiffs then submitted a supplemental memorandum with the Orleans Levee Board deposition attached. The Board filed a reply memorandum and plaintiffs filed a second supplemental memorandum in opposition.
A formal hearing was conducted on June 22, 2001. Plaintiffs submitted a post-hearing memorandum. On July 13, 2001, the trial court ruled and found "no legal authority obligating the defendants to light the pier in question." On that basis, the trial court granted summary judgment in favor of the defendants.
Plaintiffs filed a writ application in August of 2001; we declined the application in 2001-C-1571. This appeal followed.
STATEMENT OF THE LAW
On appeal, the standard of review of a motion for summary judgment is de novo. Harris v. Sternberg, XXXX-XXXX (La.App. 4 Cir.2002), 819 So.2d 1134.
This Court discussed the appellate standard of review of motions for summary judgment in Bailey v. Battiest Const. Co., XXXX-XXXX (La.App. 4 Cir. 2/6/02), 809 So.2d 1118, and in Spicer v. Louisiana Power & Light Co., 97-2406 (La.App. 4 Cir. 4/8/98), 712 So.2d 226 we stated as follows:
Summary judgments are now favored, and the rules regarding such judgments should be liberally applied. Oakley v. Thebault, 96-0937 (La.App. 4 Cir. 11/13/96), 684 So.2d 488, 490. Appellate courts review the motion for summary judgment de novo. A motion for summary judgment which shows that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law shall be granted. La.Code Civ. Proc. art. 966 C(1). An issue is genuine if reasonable persons *4 could disagree. Smith v. Our Lady of the Lake Hospital, 93-2512 (La.7/5/94), 639 So.2d 730, 751. If, on the state of the evidence, reasonable persons could reach only one conclusion, there is no need for a trial on that issue. Id.

Paragraph C(2) of Article 966, added by Acts 1997, No. 483, sets forth the burden of proof in a motion for summary judgment:
The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
The plaintiffs first assignment of error is that genuine issues of material fact exist and that the defendants failed to carry their burden of proof.
The United States Supreme Court has defined material facts as those facts that will affect the outcome of the lawsuit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202.
Given that this boating accident occurred on navigable waters, the plaintiffs correctly first sought recovery under admiralty law. Thus, the governing law we use to determine whether summary judgment is appropriate will be that of general maritime law. Plaintiffs also correctly note that state law can be used to supplement the general maritime law, but this point will be discussed later.
The plaintiffs alleged negligence on the part of the defendants by the fact of the pier's existence on navigable waters. The defendants countered and responded by producing the permit for the pier granted by the U.S. Army Corps of Engineers in 1956.
Under general maritime tort law, this action shifted the burden of proof to the plaintiffs to show a duty or legal requirement on the defendants to affix a navigation light on the boat pier. To attempt to satisfy this burden, the plaintiffs alluded to a statement in the permit from the Army Corps which stated that lighting would be required if the U.S. Coast Guard prescribed it. After seven years of litigation, plaintiffs produced no evidence that the U.S. Coast Guard ever required a light on this pier.
We agree with the trial court, that without an incumbent duty on the part of the defendants to have lit the pier, the general maritime tort law does not hold the owners of a pier liable.
In American Commercial Barge v. Alter Barge Line, Inc., 2002 WL 31246543 (E.D.La.10/4/2002), the court reflecting on maritime tort law stated:
When a moving vessel collides with a fixed object, there is a presumption that the moving vessel is at fault. The Oregon, 158 U.S. 186, 197, 15 S.Ct. 804, 39 L.Ed. 943 (1895).

* * *
The presumption may be overcome, however, if the moving vessel demonstrates that the collision, ... was caused by an act of God, the negligence of a third party, or the fault of the stationary object. See The Oregon, 158 U.S. 186, *5 197, 15 S.Ct. 804, 39 L.Ed. 943 (1895); Bunge Corp. v. M/V Furness Bridge, 558 F.2d 790, 794-95 (5th Cir. 1977).
Upon reviewing the record, we find that plaintiffs did not come forth with evidence to prove a duty existed on behalf of the defendants to light the pier. Moreover, because the defendants had a permit, for which the U.S. Coast Guard did not require a light, and because the pier was marked on the official marine navigation chart published by the federal government, we find the plaintiffs did not prove that the pier constituted an unreasonable riskto use the language of Louisiana tort laweven though maritime law applies.
The plaintiffs alleged that the trial court erred by not referencing more legal standards in this case. The trial court was succinct in its reasons for judgment, stating that it found no duty incumbent upon the defendants to light the pier. Even though the plaintiffs are correct in that more standards could have been applied, they are not in the plaintiffs' favor and would not change the outcome.
For example, the language of the federal navigational statute of 1980 (33 U.S.C. § 2006-2038) recognizes that mariners may encounter navigational hazards in conditions of poor visibility, and states:
Every vessel shall at all times proceed at a safe speed so that she can take proper and effective action to avoid collision and be stopped within a distance appropriate to the prevailing circumstances and conditions.
In determining a safe speed the following factors shall be among those taken into account:
(a) By all vessels:
(i) the state of visibility, ...
(v) the state of wind, sea, and current, and the proximity of navigational hazards; ...
See 33 U.S.C. § 2006.
Clearly a pier is an obstruction to navigation, but it is one that is routinely allowed, and this one was officially permitted by the federal government and noted on the appropriate navigational charts.
The legal duty under general maritime law to avoid an obstruction to navigation is on the operator and look-out (33 U.S.C. § 2005) of the vesselthe plaintiffs here. 33 U.S.C. § 2008.
Plaintiffs cite no statute or case law that the owner of a pier which is duly permitted by the federal government, and the precise location of which is depicted on the official marine navigation chart published by the federal government, has a legal duty to display a navigation light on the pier in circumstances where neither the federal permitting authority nor the federal regulatory/enforcement authority requires the light.
Mr. Koek was driving the boat. The pier was present for 38 years. It was dark and Mr. Koek did not reduce his speed, even though visibility was reduced. Mr. Koek violated several Inland Navigational Rules (Public Law 96-591; 94 Stat. 3415; 33 U.S.C. § 2001-2038) and had constructive knowledge of the charted pier. Jacobs v. U.S., 1979 AMC 660 (E.D.Ky.1979); Davidson S.S. Co. v. United States, 205 U.S. 187, 27 S.Ct. 480, 51 L.Ed. 764(1907); Thornton v. United States, 1964 AMC 1517, 236 F.Supp. 651 (S.D.Miss.1964).
All of these facts lead us to the next point, which is ultimately what was the cause of this maritime accident. The United States Supreme Court has held the requirement of legal or "proximate" causation and the related "superseding cause" *6 doctrine apply in admiralty notwithstanding the adoption of the comparative fault principle in state law tort litigation. In Exxon v. Sofec, 517 U.S. 830, 116 S.Ct. 1813, 135 L.Ed.2d 113 (1996), Justice Thomas wrote for the Court:
The legal question that we took this case to address is whether a plaintiff in admiralty that is the superseding and thus the sole proximate cause of its own injury can recover part of its damages from tortfeasors or contracting partners whose blameworthy actions or breaches were causes in fact of the plaintiff's injury. As we have held above, the answer is that it may not.
517 U.S. at 840, 116 S.Ct. 1813.
In the present case, plaintiffs' actions are the superseding and the sole proximate cause of their injuries. While the defendants' unlit pier may be a cause in fact of the plaintiffs' injuries, cause in fact liability is not sufficient to justify a recovery using negligence principles of general maritime law.[2] We recognize that this is different from most state tort law systems, where percentages of fault are allocated (whether they be proximate causes or causes in fact) and recovery is permitted according to the percentage of fault times the damages. Nevertheless, due to the situs and maritime nature of this accident, substantive general maritime law applies.
We embraced the "intervening" concept in Sutton v. Duplessis, 584 So.2d 362 (La.App. 4 Cir.1991) where we held:
Negligence is actionable only where it is both a cause in fact and a legal cause of the injury. Legal cause requires a proximate relation between the actions of a defendant and the harm which occurs, and such relation must be substantial in character. Sinitiere v. Lavergne, 391 So.2d 821 (La.1980) ...
A proximate cause is generally defined as any cause which, in natural and continuous sequence, unbroken by any efficient, intervening cause, produces the result complained of and without which the result would not have occurred. [Citations omitted.] When an accident results from two acts of negligence, one more remote and one an intervening cause, the presence of the intervening cause prevents a finding of liability on the one responsible for the more remote cause. [Citations omitted.]
In this case, we find that the negligence of the Orleans Parish School Board was an intervening cause which superseded any negligence on the part of Mrs. Sutton, and was the sole legal cause of Peter's injury.
Sutton, 584 So.2d at 365 [Emphasis added.]
Here, the plaintiffs' navigational negligence was the sole proximate cause of the allision and/or the superseding cause. A fixed object does not cause an accident simply by "being there." See American River Trans Company v. Arosita Shipping Company, 148 F.3d 446, 1998 AMC 2794 (5th Cir.1998).
The plaintiffs' third assignment of error is that the trial court did not apply a state legal standard of conduct by which to judge this alleged tort. The trial court was correct in applying substantive maritime tort law. This accident occurred over navigable waters in a boat. The act of *7 boating is the most classical of all maritime activities. The fact that a boat strikes a boat pier does not involve state policy considerations so significant as to justify altering general maritime law. Adams v. Chevron, U.S.A., Inc., 589 So.2d 1219 (La.App. 4 Cir.1991). Moreover, federal general maritime law preempts state law, and state law should supplement general maritime law only under special circumstances. This is not one of those circumstances.
Plaintiffs cite Green v. Industrial Helicopters, Inc., 593 So.2d 634 (La. 1992) to argue that state tort law should govern this case. The United States Supreme Court has explained, "Even though Congress has acted in the admiralty area, state regulation is permissible, absent a clear conflict with the federal law." Askew v. American Waterways Operators, Inc., 411 U.S. 325, 341, 93 S.Ct. 1590, 36 L.Ed.2d 280 (1973); see; Ray v. Atlantic Richfield Co., 435 U.S. 151, 157, 98 S.Ct. 988, 994, 55 L.Ed.2d 179 (1978). Thus, "the general rule on preemption in admiralty is that states may supplement federal admiralty law as applied to matters of local concern, so long as state law does not actually conflict with federal law or interfere with the uniform working of the maritime legal system." Pacific Merchant Shipping Ass'n v. Aubry, 918 F.2d 1409, 1422 (9th Cir.1990).
We distinguish Green, because that accident involved a helicopter crash over navigable waters, something that was not classical maritime activity. Under the facts here, there is no need to supplement federal law, there is a clearly applicable rule in the general maritime law. Green, supra at 638. An application of state law to these facts would interfere with the uniform working of the maritime legal system. Moreover, to make a finding that lights should have been required on the pier, would usurp power granted by the federal government to the U.S. Coast Guard.
For the foregoing reasons, we affirm the granting of the defendants' motion for summary judgment.
AFFIRMED.
NOTES
[1] La. R.S. 34:851.18

A. The owner of a watercraft shall be liable for any injury or damage occasioned by the negligent operation of such watercraft whether such negligence consists of a violation of the provisions of the statutes of this state or in the failure to observe such ordinary care in such operation as the rules of the common law require.
B. The owner shall not be liable, however, unless such watercraft is being used with his or her express or implied consent....
[2] Within the context of some contractual obligations, an act labeled a cause in fact may be sufficient to justify a recovery, although the damages appear to stem only from the breach. See Compania Sud Americana De Vapores, S.A. v. I.T.O. Corp. of Baltimore, 940 F.Supp. 855, 1997 A.M.C. 362, 1997 A.M.C. 384 (D.Md.1996).